# ULLMAN v. ABBOTT, ADMINISTRATOR, ETC., ET AL.

COSTS, SECURITY FOR BY NON-RESIDENT PLAINTIFF—PROBATE PROCEED-
INGS, APPLICATION OF CIVIL CODE AS TO COSTS—APPEAL AND ERROR—
HOMESTEAD, RIGHT TO OF NON-RESIDENT WIDOW—DOMICILE—EVI-
DENCE.

1. Since the probate code provides that, except as otherwise
   provided, the provisions of the code of civil procedure are ap-
   plicable to and constitute the rules of practice in probate pro-
   ceedings, the provisions of the civil code requiring a non-resi-
   dent plaintiff to furnish security for costs is applicable to pro-
   bate proceedings in the District Court; and a non-resident
   widow who petitions for the setting apart to her use the home-
   stead here situate of her deceased husband may be required to
   furnish security for costs.

2. A widow petitioning for the setting apart for her use the
   homestead of her deceased husband is properly required to
   furnish security for costs, as a non-resident plaintiff, where an
   affidavit is filed alleging her non-residence in support of a
   motion to require such security, which affidavit is not traversed,
   and the widow claims residence in the State only by way of
   inference from the fact that her husband resided here at the
   time of his death.

3. Where a widow who petitions for the setting apart of the
   homestead of her deceased husband to her use had resided out
   of the State continuously for many years, and continued to so
   reside after her husband's death, she cannot be held to have a
   residence here within the meaning of the statute requiring a
   non-resident to furnish security for costs.

4. Where a bond securing costs is given by a plaintiff pursuant
   to an order of the court under the statute requiring a non-resi-
   dent plaintiff to furnish such security, the order requiring the
   same will not be held to have affected the substantial rights
   of the plaintiff, even if erroneous.

5. A widow petitioned for the setting apart of the homestead
   of her deceased husband to her use, notwithstanding that the
   same had been devised by the will of the husband to another.
   The administrator with the will annexed, and the devisee, con-
   tested the petition, alleging the abandonment of deceased by
   petitioner, that she had never resided on the premises, or else-
   where in this State, with the deceased; but had resided in

another State in property owned by her, where she kept an immoral house, and lived in adultery with other men. She replied denying such allegations and charging that deceased refused to allow her to live with him, and that he had lived in adultery with the devisee of the homestead. She offered her own deposition in support of her allegations; but the testimony was excluded on the ground of her incompetency to testify to such facts, under the statute forbidding a party to testify where the adverse party is an executor or administrator, or claims or defends as devisee or legatee of a deceased person. *Held,* that the petitioner was incompetent to testify to facts occurring prior to the death of the testator, and that her testimony was properly excluded.

6.  While the mere temporary absence, no matter how long continued, of any member of a family will not effect a change of domicile, the head of the family continuing to reside in the State; yet where the husband has lived continuously in the State for many years, until his death, and the wife was never a member of his family or household in the State, and this was, as a matter of fact, never her home or residence, but, on the contrary, she persistently refused to reside here, she will not be deemed to have a domicile here and to have been an occupant of the homestead of her deceased husband at the time of his death.

7.  Where a husband resided in this State for many years continuously, and died here leaving a homestead, and his wife had never resided upon the homestead premises, or been a member of the family of the deceased in this State, but by her own preference made her home in another State, and lived separate and apart from her husband, *Held,* that upon the death of her husband she was not entitled to the homestead on the ground that she was the widow of the deceased, since the statute contemplates that, to be entitled to the homestead, the widow must have been a member of the family of the deceased at the time of his death, and an occupant of the homestead.

[Decided January 30, 1902.]

ERROR to the District Court, Laramie County, HON. RICHARD H. SCOTT, Judge.

This was an application by a widow, on the probate side of the court, to have the homestead of her deceased husband set apart for her use. The application was denied, and the matter was brought to this court on error. Daniel Ullman, a

citizen and resident of the City of Cheyenne, in the State of Wyoming, died in that city on the tenth day of September, 1896. He left surviving him a widow, the petitioner in this case, and an adult daughter, Josephine, and no other children. The defendant, George E. Abbott, was appointed administrator of his estate with the will annexed. The other defendant in error, Ella May Thompson, was the devisee of the property in controversy. The petition of the widow was contested on the grounds, viz.: That the petitioner had many years before the death of the testator abandoned him, and separated herself from him, against his wishes and request, and continued such abandonment until the death of the testator; that the petitioner had been living in open adultery with divers men from the time she left the deceased until the time of his death; that the petitioner had never lived with the testator upon the premises in question, nor at any place within the State of Wyoming. These allegations were denied by the petitioner, who also alleged that the deceased had prevented her from living with him, and had lived on the premises in open adultery with the devisee thereof. The other material facts are stated in the opinion.

*John C. Baird* and *Edgar W. Mann,* for plaintiff in error.

Petitioner was not a plaintiff in the sense of the statute requiring non-resident plaintiffs to furnish security for costs, which provision is found only in the civil code regulating actions at law and equity. That statute has no application to the proceedings such as this was on the probate side of the court. The plaintiff in error did not commence an action. She filed a petition in a matter already pending. She was not a moving party to bring the other parties into court. The administrator was already in court, and Mrs. Thompson merely intervened, the same as the petitioner. In a proceeding like this there is no plaintiff and no defendant. No judgment is asked against any one. The relief prayed for could be granted by the court on its own motion. At common law a plaintiff is one who brings a suit—an actor. (Anderson's

Law Dict.)   And under the statute the party complaining is to be known as the plaintiff.   (R. S., 3444.)   Plaintiff in error was not a non-resident.   The residence of the wife follows that of the husband, and the residence of the widow is that of the husband at the time of his death.

Where a statute covers a subject already covered by existing law, and the new statute revises the whole matter, making changes in the former law, and evidently intended as a substitute for it, the former law is repealed by implication, though the later statute contains no repealing clause.   (Murdock v. Memphis, 87 U. S., 590; Henderson's Tobacco, 78 U. S., 652; U. S. v. Tynen, 78 U. S., 88; Com. v. Cooley, 10 Pick., 36; Bartlett v. King, 12 Mass., 536; Longlois v. L., 48 Ind., 60; Hayes v. State, 55 Ind., 99; Dowdell v. State, 58 Ind., 333; State v. Rogers, 10 Nev., 319; U. S. v. Barr, 4 Saw., 256.)   The statute providing that the homestead is allowed to a widow residing in this State is, so far as the necessity of residence is concerned, repealed by implication by the statute of 1890-91.   (See also Seymour v. Milford, &c., 10 O., 482; Re. Hickory Tree Road, 43 Pa. St., 139; Endlich on Int. of Stat., 187.)   It is evident that the Legislature intended to specifically repeal all the old sections that were superseded by the new probate code.   The petitioner was the lawful wife of the deceased, regardless of her place of residence.

It is the duty of the judge to set aside the homestead for the widow.   He is not vested with any discretion.   (Est. of Ballentine, 45 Cal., 696; Ter. v. Nelson, 2 Wyo., 346; 14 Ency. L., 979; Sulzberger v. Sulzberger, 50 Cal., 385; In Re. Davis, 69 Cal., 458; Tyrell v. Baldwin, 78 Cal., 470; Denmarlin v. Denmarlin, 85 Cal., 71; Est. of Davis, 10 Pac., 671; In Re. Adams, 57 Pac., 569.)   A widow's right to the homestead is absolute.   Such a rule promotes justice and defeats an outrage such as is attempted in this case.

The status of the widow determines her right.   (Rogers v. Day (Mich.), 74 N. W., 190.)   The fact that she lives apart from her husband at the time of his death is of no

consequence; and even though she deserts her husband and lives in adultery, that will not forfeit her right. (Duffey v. Harris (Ark.), 45 S. W., 545; Atkinson v. Atkinson, 40 N. H., 249; Wood v. Lord, 51 N. H., 454; Meader v. Place, 43 N. H., 308; see also Towne v. Rumsey, 35 Pac., 102.) If it be true that a married man, whose wife has deserted him, is entitled to a homestead exemption, being the head of a family *de jure,* it must follow that the wife's rights in the homestead remain after the death of her husband, and that she may claim its benefits. If she is wife for the period of his life for homestead purposes, she is his widow after death of the husband for the same purposes. (Waples on Hd. Ex., p. 66, 580-581; Thompson on Hd. Ex., Sec. 73, 278; Gates v. Steele, 48 Ark., 539; Pardo v. Bitlorf, 48 Mich., 275; Lindsay v. Brewer, 60 Vt., 627; Lies v. Diablar, 12 Cal., 328; Doyle v. Coburn, 6 Allen, 71; Earll v. Earll, 60 Mich., 30; Griffin v. Nichols, 51 Mich., 575.)

When a wife is driven from her home by the misconduct of her husband, she carries with her all her marital rights, including the right of homestead. (Sherid v. Southwick, 43 Mich., 515; Lamb v. Wogan, 27 Neb., 236; Atkinson v. Atkinson, 37 N. H., 434; Wood v. Lord, 51 N. H., 448; Barker v. Dayton, 28 Wis., 367; Keyes v. Scanlon, 63 Wis., 345; Welch v. Rice, 31 Tex., 688; Earl v. Earl, 9 Tex., 630; Newland v. Holland, 45 Tex., 588; Reynolds v. Reynolds, 24 Wend., 193.) In some states the wife is entitled to benefit of homestead law, although she never resided in the State. (20 La. Ann., 383; 96 Am. Dec., 411; Cole's Widow v. Ex'rs., 7 Mart., 41; Dixon v. Dixon, 4 La., 188; Johnston v. Turner, 29 Ark., 280; Green v. Crow, 17 Tex., 180; Lacey v. Clements, 36 Tex., 661; Henderson v. Ford, 46 id., 627; Williams v. Swetland, 10 Ia., 51; Barker v. Dayton, 28 Wis., 367; Keyes v. Scanlon, 63 id., 345; Brown v. Adm'rs., 68 Mo., 388; Whitehead v. Tapp, 69 id., 415.) Even desertion by the wife does not forfeit her right, unless in those states where the right is limited to a widow who resides on the homestead property with her husband at the time of his

death.   (8 C. L. J., 46; Brown v. Brown, 68 Mo., 388; Epro-
son v. Wheat, 53 Cal., 715; Partho v. Bittdorf, 48 Mich.,
275; 82, id., 202; 86, id., 283; Rosholt v. Mehus, 57 N. W.
(N. D.), 783; Barney v. Leeds, 51 N. H., 253; Silloway v.
Brown, 12 Allen, 30; Waples on Hd. & Exm., 66.)

Homestead laws are not in derogation of the common law
and must be liberally construed.   (Campbell v. Adair, 45
Miss., 182; 67 Mo., 308; 36 Vt., 271; 46 N. H., 43; Thomp.
Hd. & Exm., 4; Lindley v. Davis, 7 Mont., 206; 15 Ency.
L., 533; id., 555-556.)

Therefore, the widow herein is entitled to the homestead
because she is the lawful widow.   Having lived separate from
her husband on account of compulsion, decedent could not
during his lifetime, by his wrongful act, unjustly deprive her
of her rights by forcing her to live apart from him.

*John W. Lacey,* for Abbott, the Administrator.

The motion to strike out parts of the answer was not
brought into the record by bill of exceptions, nor was any
exception taken to the ruling upon the motion brought into
the record by bill.   Such motions and the rulings upon them
are not parts of the record unless brought into it by bills of
exceptions.   (Perkins v. McDowell, 3 Wyo., 328; France v.
Bank, 3 Wyo., 187; Johnston v. Little Horse Creek, 4 Wyo.,
164; Rubel v. Wiley, 5 Wyo., 427; Van Horn v. State, 5
Wyo., 501; Smith Drug Co. v. Casper Drug Co., 5 Wyo.,
510; School District v. Western Tube Co., 5 Wyo., 185;
Hicks v. Person, 19 O. St., 426-446; Sleep v. Williams,
21 O. St., 82; Garner v. White, 23 O. St., 192; State v.
Sweeney, 68 Mo., 96; Cleland v. Waldrich, 78 Cal., 358;
Boulter v. State, 6 Wyo., 66; Syndicate Imp. Co. v. Brad-
ley, 6 Wyo., 171.)

As to the order requiring security for costs, there is noth-
ing in the bill of exceptions showing that any such motion
was made, or that the court ever ruled upon it, or that any ex-
ceptions were reserved, or any action taken by the plaintiff
m error in relation to the ruling.   If the ruling had been prop-

erly reserved in the bill of exceptions the only way that any error could be predicated upon it here would be to assign such ruling as ground for a new trial, and then assign the overruling of the motion for a new trial as error here.   But in order that the plaintiff in error could sustain a motion for a new trial, not only must her substantial rights have been materially affected, but the order here complained of must have "prevented petitioner from having a fair trial."   If she was required to give security, and complied with the order, there was nothing in this which in any way affected the fairness of the trial.   Again, the petitioner, from her own showing, as well as from the affidavit requiring her to give security for costs, was an actual non-resident.   Even though it be held that she was constructively a resident during the lifetime of her husband, by his death she became *feme sole* and had full power over her residence.   Sec. 4550, Rev. Stat., 1899, makes the civil code as to security for costs applicable here.

As to the ruling of the court excluding portions of the deposition of the petitioner, Sec. 3683, Rev. Stat., 1899, provides that "a party shall not testify where the adverse party is * * * an executor or administrator."   To this general provision the section makes eight exceptions.   None of these exceptions can be held to reach any of the matters excluded by the court below.   By Sec. 4550, Rev. Stat. (Laws 1890-91, p. 302, Sec. 9, where word "division" reads "act"), this rule as to the competency of witnesses is also made the rule in probate matters.   Indeed, Sec. 3683, as to the competency of witnesses, would of its own force apply to "actions at law, suits in chancery, proceedings in admiralty, and all other judicial controversies in which the rights of property are involved."   (United States v. Cigars, 1 Woolworth, 123; Rison v. Cribb, 1 Dillon, 181.)

The clear weight of authority is that a wife who has demeaned herself as the petitioner has and who has never resided in the State, is not entitled here to her deceased husband's real estate as against creditors.

By the statute of Westminster 2, 13 Edward I, Chap. 34,

it was enacted that "If a wife willingly leave her husband and go away and continue with her advouterer she shall be barred forever of action to demand her dower that she ought to have of her husband's lands if she be convicted thereupon, except that her husband willingly, without coercion of the church, reconcile her and suffer her to dwell with him, in which case she shall be restored to her action." Under this statute the rulings of the English courts clearly "place the forfeiture of the dower upon the fact of a living from the husband in adultery, and not upon the circumstances of the elopement." (Hetherington v. Graham, 6 Bingham, 133.)

This statute was made the law of the Territory, December 2, 1869, by the statute adopting the common law. Eight days later dower was abolished and, instead, the wife was given, among other things, a right of homestead. It seems important to note, however, that so long as dower existed among us it was not available to the wife who lived in adultery away from her husband at the time of his death. It might not be unimportant to note further that the statute of Edward I as to adultery and its effect has not been repealed, though dower itself has been abolished here. If dower were again restored without more it would probably still be subject to the statute of Edward I. The same act that abolished dower gave to the widow in its stead among other things the homestead right, but expressly limited this homestead right to a "widow residing in this Territory." (Laws 1869, p. 401, Sec. 11; Com. Laws 1876, p. 288, Sec. 11; Rev. Stat., 1887, Sec. 2231; Rev. Stat., 1899, Sec. 4736.)

Secs. 3901 and 3902, while they provide for a homestead for "every householder in the State of Wyoming, being the head of a family," also provide that "such homestead shall only be exempt while occupied as such by the owner thereof or the person entitled thereto, or his or her family." And Sec. 4733 and following contains such expressions as this: "The widow or children are entitled *to remain* in possession," and "the family of the deceased." It is claimed by counsel that Sec. 2231 of the Rev. Stat. of 1887 (Sec. 4736, Rev.

Stat., 1899) has been repealed by implication and by the en-
actment of the probate code, January 10, 1891. There is no
general repealing clause in the act of January 10, 1891, by
which all inconsistent laws are repealed. There is a specific
repealing section of the act of January 10, 1891, which re-
peals particular sections of the prior law (Laws 1890-91, p.
318, Sec. 6), but the one in question is not included.

"The specification of certain sections of an. act as repealed
is deemed equivalent to a declaration that the remaining sec-
tions shall continue in force; that a clear repugnancy would
be necessary to further extend the repeal." (Sutherland on
Stat. Const., Sec. 147.) The legislative intent is still further
manifest by the fact that the provisions of Sec. 2231 are
carried forward into the Revised Statutes of 1899.

In construing a statute all other statutes in *pari materia,*
that is to say all other statutes upon the same subject, must
be considered. (State v. Cincinnati Rd., 37 O. St., 170;
Wallace v. Wallace, 3 N. J. Eq., 616.)

A number of courts have had the same question under
statutes less clear than our statutes, and it is held that a
wife who separates herself from her husband and continues
in wanton disregard of her duties as a wife to live separate
from him at the time of his death is estopped from claiming
homestead rights. (Newland v. Holland; 45 Tex., 588;
Seers v. Seers, id., 557; Trawich v. Harris, 8 id., 312; Earle
v. Earle, 9 id., 630; Green v. Crow., 17 id., 180; Lacey v.
Clements, 36 id., 661; Henderson v. Ford, 627.) The three
decisions last cited holding that a wife is not so estopped if
she is by consent of the husband absent from the. State waiting
for him to provide a home after he has gone to the State to
take up a residence, thus showing the force of the general
rule. (Dickman v. Birkhauser (Neb.), 21 N. W., 396; Far-
well Brick Co. v. McKenna, 86 Mich., 283; Prater v. Prater
(Tenn.), 9 S. W., 361.)

*W. R. Stoll,* for defendant in error, Thompson, the legatee.

Mrs. Ullman was plainly prohibited from testifying to
facts occurring during the lifetime of the decedent, as parties

may be adverse wherever proceedings are instituted, when one claims, and the other denies, rights, especially concerning property, which may be compelled, by a judgment of a court, to be conveyed to the one, to the detriment of the other.

A homestead is given to the family, or head of the family, as a home, so long only as it is made their or his home. It may be abandoned, or forfeited, by the voluntary act of the party who might otherwise be entitled to it. And it is a general principle that the wife who abandons her husband and his home cannot, while such abandonment continues, claim for herself the benefit of such exemption; and if such abandonment continue until the husband's death, she cannot thereupon claim such exemption for herself. The term "abandonment" means, as here used, leaving the husband and the place selected as his home, under such circumstances as are not legally sufficient to justify her in so doing. (8 Tex., 312; 9 id., 630; 36 Tex., 661; 45 id., 557; Duke v. Reed, 64 id., 705; Cockrell v. Curtis (Tex.), 18 S. W., 436; Wickersham v. Comerford (Cal.), 31 Pac., 358; Stanton v. Hitchcock (Mich.), 31 N. W., 395; 86 Mich., 283; Foster v. Leland, 141 Mass., 187; 87 Tenn., 78; Carrigan v. Rowell, 96 Tenn., 185; 16 Neb., 686.)

Under the statutes of this State the homestead cannot vest in anyone other than an occupant. (R. S., 3902; Towne v. Rumsey, 5 Wyo., 116.)

CORN, JUSTICE.

One Daniel Ullman died September 10, 1896, leaving, amongst other property, a house and lot in Cheyenne, which he occupied as his residence for some years prior to and at the time of his death. By his will he devised this property to the defendant in error, Ella May Thompson. The defendant in error, George E. Abbott, was appointed administrator with the will annexed, and, in the course of administration, on February 9, 1897, the plaintiff in error, Harriet Ullman, filed her petition asking that the above mentioned homestead be set apart for her use and benefit, as the widow of the de-

ceased. Upon a hearing the District Court found against the petitioner and ordered that her petition be dismissed, and that she pay the costs of the proceeding. There was a motion for a new trial and a bill of exceptions, and plaintiff in error comes to this court. Numerous errors are assigned, but they are all comprehended under a few propositions.

(1)    The District Court, upon motion of defendant in error, Thompson, ordered that the petitioner give a bond for costs. This order is assigned as error. She gave the bond and the trial was proceeded with. The order, therefore, if erroneous, did not affect materially her substantial rights and did not prevent her from having a fair trial. But we think the order was not erroneous. Section 3781, Rev. Stat., 1899, provides that the plaintiff, if a non-resident of the county in which the action was brought, must furnish sufficient security for costs. But it is insisted that the "action" referred to in this section is the "civil action" provided for by the code of civil procedure, and that this proceeding is not such an action and is not covered by the statute; that the petitioner was not a "plaintiff" within the meaning of the law, and that she was not a "non-resident," being the widow of a man who at the time of his death was a resident of the county in which the proceeding was pending. The section of the statute referred to appears in the code of civil procedure, was enacted long prior to the adoption of our present probate code, under whose provisions this proceeding was had, and without doubt was primarily applicable to suits brought under the code of civil procedure. But the probate code (Sec. 4550, R. S., 1899) provides that "except as otherwise provided in this division, the provisions of the code of civil procedure are applicable to and constitute the rules of practice in the proceedings mentioned in this division." That the officers of the court and litigants should be protected in their costs as against opposing litigants who reside beyond the jurisdiction of the court, which is the object of the provision, is quite as desirable and necessary in proceedings under the probate code as in actions under the civil code, and

there can be no doubt of the applicability of the section to
probate proceedings. For the same reason the fact that the
section employs the word plaintiff instead of petitioner is not
significant. As originally enacted, it was applicable only to
the "action" of the civil code and used the word which cor-
rectly described the moving party in the suit. But it would
be a nicety of distinction entirely unwarranted to refuse to
apply it to probate proceedings, as required by Section 4550,
because the moving party, though clearly indicated by the
language used, is not named with precise and technical ac-
curacy. In regard to the proposition that the petitioner was
not a non-resident, it is sufficient to say that there was filed
with the motion an affidavit of her non-residence which was
not traversed by her, and she does not allege by her petition
or otherwise that she was a resident of this State, except by
way of inference from the fact that she was the widow of a
man residing here at the time of his death. And the proof
is clear that, whatever may have been her domicile in a tech-
nical sense during his life, she had actually resided out of
this State for many years, so that at the time her petition was
filed, five months after his death, she had no residence here
in any possible view of the facts.

(2) In answer to the petition of plaintiff in error, it was
alleged by the defendants in error that the former had aban-
doned the deceased many years before his death, and had
never at any time resided with him upon the premises in ques-
tion or elsewhere in the State of Wyoming, but had resided
in the City of Denver in property owned by herself; that she
had been the keeper of houses of prostitution there and lived
in adultery with other men. She replied, denying these alle-
gations, and alleged that she had lived apart from the de-
ceased because he had refused to allow her to live with him
at his home in Cheyenne and had refused to live with her in
Denver, and that she was further prevented from living with
him at his home in Cheyenne by the fact that he was living
there in adultery with the defendant in error, Ella May
Thompson. Her own deposition was offered in support of

these allegations, but the testimony was excluded upon the ground that she was not a competent witness under the statute. This is assigned as error.

Section 3683, Rev. Stat., provides that a party shall not testify where the adverse party is an executor or administrator, or claims or defends as devisee or legatee of a deceased person. But it is contended by counsel for plaintiff in error that this proceeding was simply a motion; that it was not even necessary that any petition should be filed, it being the duty of the court under the statute to set apart the homestead to the widow either on a petition therefor or on its own motion; that, therefore, she was not a party, that the administrator and devisee were not adverse parties within the meaning of the law, and that the prohibition of the statute did not apply.

The purpose of the statute is entirely plain. By the common law parties in interest are disqualified from testifying. By the more liberal rule of our statutes parties in interest are permitted to testify, except in certain cases where it would put the litigants upon unequal ground and give an unfair advantage to the party testifying, as where the testimony of the original party to the transaction is lost by his death. And certainly the reason of the exception applies with equal force, no matter what the form of the proceeding may be by which it is sought to charge the estate of a deceased person. Moreover, the definition of the word "party" insisted upon by the plaintiff in error is too narrow, as a brief examination of our statute will demonstrate. For instance, Section 3665 provides that the issues in any action or "proceeding" may be referred by consent of the "parties." Section 3666 provides that the court may direct a reference without the consent of the parties in any "case" where the parties are not entitled to a trial by jury. Section 3713 provides that the officer before whom depositions are taken must not be a relative or attorney of either "party," or otherwise interested in the event of the action or "proceeding." Section 3715 provides for notice to the "adverse party," specifying the "action or proceeding"

and the name of the court or "tribunal" in which the deposition is to be used. In 3716 the word party is used in the same way and in 3718 occurs the phrase "a party to the action or proceeding." These sections, taken almost at random from the civil code, show that the use of the word is not limited, as insisted by plaintiff in error. We think the petitioner was clearly incompetent to testify to facts occurring prior to the death of the testator, and the testimony was properly excluded.

(3) The petitioner was married to the testator in 1854 in Pennsylvania. From 1859 or 1860 to 1867 or 1868 they lived together in Denver, when the testator removed to Cheyenne, where he acquired considerable property, and where he resided, with the exception of one or two years spent in Texas, up to the time of his death in 1896. The evidence tends to show that up to 1871 he repeatedly urged the petitioner to come to Cheyenne and live with him, but that she at all times refused and never at any time resided with him in this State; but that up to the time of his death she generally resided in Denver as the keeper of a disreputable house in property owned by herself. Under these circumstances the court below held that she was not entitled to the homestead and dismissed her petition. The correctness of this decision is the principal question in this case.

The authorities are not entirely harmonious. In Missouri and Arkansas it is held that, though the wife has voluntarily abandoned her husband and is living apart from him at the time of his death, yet she is his widow within the meaning of the law and entitled to the homestead. (Brown v. Brown's Adm., 68 Mo., 388; Duffy v. Harris, 65 Ark., 253; 45 S. W., 545.) The New Hampshire decisions are cited as sustaining the same view, but it seems to be doubtful whether that court has passed upon the precise question.

In Michigan, upon the other hand, it is held that when a wife abandons her husband and her home without legal cause—that is, not under circumstances that would entitle her to a divorce—she does not carry with her her marital

rights in the homestead.   (Farwell Brick Co. v. McKenna,
86 Mich., 283.)   And so in Texas, Tennessee and Nebraska.
(Newland v. Holland, 45 Tex., 588; Sears v. Sears, id., 557;
Trawick v. Harris, 8 Tex., 312; Dickman v. Birkhauser, 16
Neb., 686 (21 N. W., 396); Prater v. Prater, 87 Tenn., 78
(9 S. W., 361.)

Counsel for plaintiff in error suggest that the sections of
our statutes bearing upon the question were taken from the
laws of California; that the Supreme Court of that State
have held that a widow under such circumstances is entitled
to the homestead, and that we are bound by their decisions.
It is true that some of the sections of our statutes bearing
upon the question of homestead are taken from California,
but we do not think the California decisions support the posi-
tion of plaintiff in error.   In Wickersham v. Comerford, 96
Cal., 433, the husband and wife had separated by mutual
agreement and were living apart at the time of his death.
The court denied the right of the widow to have a homestead
set apart to her.   And while the fact that there had been a
division of property between them at the time of the separa-
tion seems to have been influential in the determination of the
court, yet they also say that in consequence of the agreement
of separation, and the fact of separation in accordance there-
with, she was not a member of her husband's family at any
time after the separation, and that she was not entitled to
such homestead unless she had been a member of his family
immediately before and at the time of his death.   That de-
cision involved a construction of Section 1465 of the Cali-
fornia code, which is Section 4737 of ours, and is the sec-
tion upon which plaintiff in error seems chiefly to rely.   The
California court in construing Section 1466, with reference
to the allowance to be made to the widow, also express the
opinion that, while the letter of the statute may cover other
cases, the Legislature had in contemplation the ordinary case
where the parties to the marriage relation live together until
death severs the tie.   (Estate of Noah, 73 Cal., 583 (2 Am.
St. R., 829.)

But, independent of authority, the whole tenor of our statutes upon the subject demonstrates that, to be entitled to the benefit of their provisions, the widow must, at the time of her husband's death, have been a member of his family and a resident of this State. In its origin, the homestead right is a mere exemption from execution. Under the head of "Exemption from Execution," subdivision 4 of Chapter 1, Division 5, Statutes of 1887, it is provided that every householder in the Territory of Wyoming, being the head of a family, shall be entitled to a homestead exempt from execution and attachment. (Section 2780.) By the next section it is provided that such homestead shall only be exempt while occupied as such by the owner thereof, or the person entitled thereto, or his or her family. The next section provides that when any person dies seized of a homestead, leaving a widow or husband, or minor children, such widow or husband or minor children shall be entitled to the homestead. Section 2788 in the same subdivision provides that certain personal property shall be exempt "when owned by any person, being the head of a family and residing with the same," and shall continue exempt while the family are removing from one place to another in this Territory. And it is expressly provided, in the same section, that "no property of any person about to remove or abscond from this Territory shall be exempt under the provisions of this subdivision." Section 2789 preserves the benefits to the family in case the head of the family shall die, or desert or cease to reside with the same. Section 2790, after exempting from execution certain articles of personal property, provides that none of the articles mentioned in this and the preceding sections of the subdivision shall be exempt unless the person claiming such exemption shall be a *bona fide* resident of this Territory. Section 2231 of the same revision of the statutes provides that "if any decedent leaves a widow residing in this Territory" she shall be allowed to retain certain specified articles of personal property, and also all property, real and personal, which is by law exempt from execution. The conclusion is irresistible that

the Legislature intended that these exemptions, including the homestead, should be for the benefit of the family, and that they should be confined to persons residing in this State.

But it is contended by counsel for plaintiff in error that Section 2231, above referred to, was repealed by the act adopting the California probate code at the Legislative session of 1890-91. That act contains no general repealing clause, but specifies that Sections 1969 to 2220, 2240 to 2273 and 2287 to 2331 are repealed. This enumeration excludes Section 2231, apparently by intention, and it is brought into the revision of 1899 as a part of Section 4736, while the section with which it is alleged to be inconsistent is 4737, the next succeeding section. The former provides that the exempt property, including the homestead, shall be retained by the widow and set apart to her by the executor or administrator. Section 4737 is as follows:

"Sec. 4737. Upon the return of the inventory, or at any subsequent time during the administration, the court may, on its own motion, or on petition therefor, set apart for the use of the surviving husband or wife, or, in case of his or her death, to the minor children of the decedent, all the property exempt from execution, including the homestead, selected and designated; Provided, Such homestead was selected from the common property, or from the separate property, of the persons selecting or joining in the selection of the same. If none has been selected and designated, or in case the homestead was selected by the survivor out of the separate property of the decedent, the decedent not having joined therein, the court must select, designate and set apart, and cause to be recorded a homestead for the use of the surviving husband or wife and the minor children; or if there be no surviving husband or wife, then for the use of the minor children, out of the common property, or if there be no common property, then out of the real estate belonging to the decedent."

The alleged repugnancy is that the earlier enactment requires that the executor or administrator shall set apart

the homestead, while by the latter it is to be done by the court. Conceding that the two sections are inconsistent in this particular, the result would be a repeal only to the extent of the repugnancy. (Sutherland Stat. Con., Sec. 138.) That part of Section 4736 which seems to limit the right of homestead to a widow residing in this State is not in conflict with any of the provisions of the probate code. Indeed, by Section 4733, which is Section 1464 of the California code, it is provided that the widow and minor children are entitled to "remain" in possession of the homestead. This language indicates that in contemplation of the Legislature the wife, at the time of the death of the husband, must have been a member of his family and an occupant of the homestead. And, indeed, the provision extending the right of homestead only to a widow residing in this State merely emphasizes a principle which runs through the statutes of this and most of the other states. It is not questioned that the widow in some cases may be entitled to the homestead, although she was absent at the time of her husband's death, and although she may never have been upon the premises claimed or within the borders of the State, but it is not where she has voluntarily ceased to be a member of her husband's family and, merely by her own preference, made her home elsewhere.

It is urged, however, that the domicile of the wife is that of the husband, and that, therefore, the widow in this case must be held to have been a resident of this State and an occupant of the homestead at the time of the husband's death. It is true that the mere temporary absence, no matter how long continued, of any member of the family will not effect a change of domicile. But the petitioner was never a member of the family or household of the deceased, in this State, and this was, as a matter of fact, never her home or residence. Upon the contrary, she persistently and in terms refused to reside here or make this her home. For many purposes, as to bring an action for divorce and the like, the law recognizes that the wife may acquire a domicile

distinct from that of the husband. (Dickman v. Birkhauser, 16 Neb., 686.) And there can be no question that our statutes of exemption recognize the possibility of a separate residence of the husband and wife. In this case it is a question of fact, and the evidence shows that the petitioner had never resided upon the premises in question or been a member of the family of the deceased in this State. There is some claim that the deceased maintained improper relations in his house with the defendant in error, Mrs. Thompson, and that petitioner was thereby prevented from living here with him as his wife. But this charge is not sustained by any competent evidence, and if such improper relations existed, it was after she had refused to take up her residence here and acquired a home and domicile elsewhere.

The judgment will be affirmed.

POTTER, C. J., and KNIGHT, J., concur.