Hazel Hopkin WAMBEKE, Charlotte Hopkin
Lewis and Neil Hopkin, Appellants
(Objectors below),

v.

Eileen HOPKIN, Individually and as Admin-
istratrix of the Estate of Leo N. Hopkin,
Deceased, Appellees (Petitioners below).

No. 3051.

Supreme Court of Wyoming.

June 12, 1962.

Ernest J. Goppert of Goppert & Fitz-stephens, Cody, for appellants.

Robert B. Bowman of Bowman & Bowman, Lovell, for appellees.

Before BLUME, C. J., and PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

This case presents the question as to whether a widow who owns the fee title to the family homestead by reason of survivorship in an estate by entireties shall also be entitled to receive from the estate of her husband one-half of the value of a homestead exemption, there being minor children of the deceased who are not children of the widow. It also presents the question as to whether a note payable to parties who are husband and wife shall be presumed to be the property of the widow alone upon the death of her husband.

Leo N. Hopkin, a resident of Big Horn County, Wyoming, died intestate March 13, 1960. His heirs consisted of Eileen Hopkin, his widow, and five children by a former marriage. At the time of his death three of the children were over 21 years of age and two of them were minors. According to the stipulation of all the heirs Mr. Hopkin, during his lifetime, purchased a house and lot for a home for his wife and family and himself in Lovell, Wyoming. It is agreed that its reasonable market value at the time of purchase and at the time of death was $9,500. Title was taken in the name of Leo N. Hopkin and Eileen Hopkin. They were at that time husband and wife but were not so designated in the deed. It is further agreed that Hopkin, his wife and one minor child occupied this residence as a home from the date of its purchase to the date of his death.

Prior to the marriage of Leo N. Hopkin and Eileen Hopkin, Mr. Hopkin owned certain real and personal property which was sold to Fred Grabbert after his marriage to Eileen. In connection with this sale a promissory note was executed by Grabbert for $52,000 payable to Leo N. Hopkin and Eileen Hopkin. A balance of $32,000 was still owing on the note at the time of Hopkin's death.

The widow, Eileen Hopkin, claims to own the home property by reason of survivorship in an estate by the entireties. Her authority for such claim is the case of Peters v. Dona, 49 Wyo. 306, 54 P.2d 817. There being no other homestead property in the estate itself, she made application to the probate court for an allowance of $2,000 in cash in lieu of a homestead pursuant to the provisions of § 2–213, W.S.1957. In addition, Mrs. Hopkin claimed to own the Grabbert note in its entirety and declined to include it or any part of it in the assets of the estate.

The probate judge approved her action in both instances allowing $2,000 to the widow and $2,000 to the two minor children in lieu of homestead property, and permitting the widow to retain the Grabbert note as her sole and individual property. The three adult children of Hopkin have appealed both decisions insofar as such decisions favor Eileen Hopkin. They do not contest the award of $2,000 to the two minor children.

*The Homestead Exemption*

The provisions of § 2–213, insofar as they are pertinent to this case, are as follows:

"When any resident of this state dies leaving a widower or widow, or minor children, the court shall set over to such widower or widow, if any, and if none, to such minor children, as their absolute property, all property of said decedent exempt from execution under the exemption laws of this state, including the homestead * * *; and in case decedent shall not have any or all of the property specified under said exemption laws, such widower, widow or minor children, as the case may be, shall be entitled to the value of such exempt property either in money or other property as they may prefer. * * *"

Following these provisions is a proviso to the effect that, if the surviving spouse is not the parent of some of the minor children, one-half of (said) property shall be set over to the surviving spouse and one-half to such minors.

Inasmuch as the foregoing section pertains to property of a decedent "exempt from execution under the exemption laws of this state," it is necessary that it be construed along with the applicable exemption laws. In that connection art. 19, § 9, of the Wyoming Constitution requires that a homestead as provided by law shall be exempt from forced sale under any process of law. The implementing statute is § 1–498, W.S.1957, which specifies that:

"Every householder in the State of Wyoming, being the head of a family * * * shall be entitled to a homestead not exceeding in value the sum of four thousand dollars ($4,000.00), exempt from execution and attachment * * *."

According to § 1–499, W.S.1957, such homestead is exempt only while occupied as such by the owner thereof, or the person entitled thereto, or his or her family. Occupancy and not title is the essential consideration in determining whether the head of a family has a homestead. In Wyoming it has been established that it is immaterial in whom the legal title is vested as long as the property is the actual home of the family. Altman v. Schuneman, 39 Wyo. 414, 273 P. 173, 175. The homestead right, as far as Wyoming is concerned, can be acquired upon an undivided interest in land. State Bank of Wheatland v. Bagley Bros., 44 Wyo. 244, 11 P.2d 572, 585, 44 Wyo. 456, 13 P.2d 564.

Section 2–213, as a part of our probate code, does not contemplate a probate homestead different from the homestead contemplated under the exemption laws. This is apparent in two ways. First, it is not primarily a "homestead" as such which the statute authorizes to be set over. It is all property of the decedent "exempt from execution," including the homestead. Second, the value of the homestead referred to in § 2–213 is not fixed in the probate code. It is fixed in the exemption laws by § 1–498. Thus, a probate judge, as in the case at bar,

necessarily turns to the exemption laws to find what, if any, property is to be set over pursuant to the provisions of § 2-213 and to find the value thereof when money or other property is set over in lieu of exempt property.

It is stated in Annotation, 89 A.L.R. 511, 512, that as a general rule a debtor need not be the absolute owner in fee in order to establish a homestead right in land, but that "any interest," coupled with the requisite occupancy by the debtor and his family, is sufficient to support a homestead exemption. At pages 540-548 of the annotation, this majority rule is particularly applied to tenants in common and to joint tenants. The author of the annotation recognizes, at page 548, that even in jurisdictions following the minority point of view, to the effect that a homestead cannot be established on property held in joint tenancy or tenancy in common, there are certain exceptions and modifications.

The following cases have held that the right of homestead could attach to property held by husband and wife as joint tenants or as tenants by the entirety: Simpson v. Biffle, 63 Ark. 289, 38 S.W. 345; Oswald v. McCauley, 6 Dak. 289, 42 N.W. 769; Lininger v. Helpenstell, 229 Ill. 369, 82 N.E. 306, 120 Am.St.Rep. 264. We know of no jurisdiction which has recognized homestead rights in property held in tenancy in common and still rejected homestead rights in property held by tenants by the entirety. We are shown no reason why this should be done in our state.

■ Since it must be regarded as the settled law of Wyoming, under the rule of stare decisis, that a homestead right can be acquired upon an undivided interest in land, and that it is immaterial in whom the legal title is vested, it necessarily follows that the right of homestead will attach to real estate held by a husband and wife as tenants by the entirety and occupied by them as a residence. See Waddy v. Waddy, 200 Tenn. 140, 291 S.W.2d 581. In 40 C.J.S. Homesteads § 88, pp. 525-526, it is said that the rule as to the existence of homestead

rights in property held jointly or in common is held especially applicable where the tenants in common or joint owners are husband and wife.

In the case at bar the only question before us, as far as the widow's claim for $2,000 is concerned, is this: Did Leo Hopkin at the time of his death have the property specified in § 1-498, namely a "homestead"? It is clear from what we have said that he did have. If an execution or attachment had been levied against the owners of this property, Hopkin as the head of the family could have claimed an exemption pursuant to the provisions of § 1-498.

It would be an anomaly to hold, as this court did in Altman v. Schuneman, supra, that the husband has a homestead exemption even though he had transferred the entire fee title to his wife, and still hold, as the widow contends here, that title must come to her from her husband's estate before it can be said that he had a homestead. As a corollary to what was decided in the Altman case, it can be said that, since it does not matter in whom the legal title is vested, likewise it does not matter how the legal title becomes vested in the person or persons who may be entitled to receive it.

Counsel for the appellee, Mrs. Hopkin, cites In re Edelman's Estate, 68 Wyo. 30, 228 P.2d 408, 414, contending that it establishes the right of a widow, in a case similar to the case at bar, to request a one-half share of the exempt property. In that case the court considered that the widow would receive her share of the exempt property under the will of the deceased without requesting it. A statement was made, however, to the effect that nothing would prevent her from requesting her one-half share of the exempt property. This statement fails to support the widow's contention in the instant case. Edelman at the time of his death did not have a homestead, whereas Hopkin did have.

■ Rights of heirship or inheritance vest immediately on the death of the intestate, and the devolutionary rights of the heirs must be determined by relation to that

date. 26A C.J.S. Descent & Distribution § 65, pp. 673–674. Thus, in Ullman v. Abbott, 10 Wyo. 97, 67 P. 467, 470, a widow was denied the right to have a homestead set over to her because, "at the time of the death of the husband," she was not a member of his family and an occupant of the homestead.

In § 2–213 the phrase "in case decedent shall not have any or all of the property specified under said exemption laws" was used. If the legislature had intended this phrase to mean in case *decedent's estate* shall not have any or all of the property specified, it should have used the words "decedent's estate" instead of the word "decedent." However, by use of the word *decedent* the legislature made the phrase "in case decedent shall not have" applicable as of the time of death and not during the process of administration which follows death.

The dictionary definition of a decedent is a dead person, and a dead person cannot have anything. Therefore, if we attempt to apply the phrase in question as of a time after death, we make the statute ambiguous and meaningless. On the other hand, by saying the question presented is whether Leo Hopkin had a homestead *at the time of death* we make the statute meaningful and give a sensible construction to the word "decedent," without substituting words of our own.

During the lifetime of husband and wife, in an estate by the entirety, the estate can be changed or severed only by the voluntary joint acts of both parties or by operation of law, e. g., by divorce. Hutcherson v. United States, D.C.Mo., 92 F.Supp. 168, 170, affirmed United States v. Hutcherson, 8 Cir., 188 F.2d 326; Schafer v. Schafer, 122 Or. 620, 260 P. 206, 208, 59 A.L.R. 707; 41 C.J.S. Husband and Wife § 34, p. 461. After one of the parties dies, the estate is vested solely in the surviving spouse. Our state gives recognition to this in §§ 34–97, 34–98 and 34–99, W.S.1957, wherein the method of establishing rights

of survivorship upon the death of a tenant, in an estate by entirety, is set forth. Even though Eileen Hopkin did not receive the homestead through her husband's estate, she did receive it and the result is the same.

The question as to whether the allowance of $2,000 to the minor children was proper is not before us and we will not disturb such allowance. Ordinarily, as set forth in 40 C.J.S. Homesteads § 269, p. 773, where in the nature of things land cannot be set apart as a homestead to the survivors, then the law will make provision for them in lieu thereof. Without deciding whether § 2–213 may be applied differently in the case of minor children who are not children of the surviving spouse, when no part of the homestead goes to them or can be set apart for them, we will say in passing that we find sufficient authority in §§ 2–210, 2–211 and 2–212, W.S.1957, which have to do with rights of the family and extra allowances for the family, to justify and support the allowance to the minor children in this instance, in the absence of a contest on that allowance.

### The Grabbert Note

The children of Hopkin who were of age at the time of his death, as appellants, contend that tenancies by the entirety do not apply to personal property in Wyoming, and that a joint tenancy with the right of survivorship is not created by making a note payable to two persons who are husband and wife unless there is evidence showing an intent of the maker so to do. No such evidence is claimed in the case before us.

Counsel for the Hopkin widow takes the position that the question as to whether a tenancy by the entirety can exist in personal property in Wyoming does not arise. He insists, however, that Hopkin and his wife were joint tenants with respect to the Grabbert note and that by reason thereof the wife, as survivor, became the sole owner of such note. His position is based upon the erroneous assumption that this court, in the case of Hill v. Breeden, 53 Wyo. 125, 79

P.2d 482, decided that a promissory note creates a joint tenancy in the obligees.

Nothing was said in the Hill case to justify counsel's assumption. On the contrary, recognition was given, at 79 P.2d 487, to the fact that the survivor may have only the legal title and not the equitable title or the whole of the note. The court went on to say that it did not need to decide whether there was any duty to account. Having held, at 79 P.2d 487–488, that the right of action passes to the survivor, it was then said that title to the instrument existed in the survivor for that purpose.

In the Hill case, at 79 P.2d 487, the supreme court declined to decide whether a tenancy by the entirety can exist in personal property in Wyoming, and in Hartt v. Brimmer, 74 Wyo. 338, 287 P.2d 638, 640–641, it declined to decide how a joint tenancy with the right of survivorship in personal property may be created. In the case at bar it matters not whether we think in terms of a tenancy by the entirety or a joint tenancy. The parties concerned were in fact husband and wife, and if either of these estates has been created, it may as well, for all practical purposes, be called an estate by the entirety.

Starting with the proposition that at common law a conveyance to a husband and wife was presumed to create an estate by entirety, and that generally speaking the common law favored joint tenancies, we find more modern text writers and decisions saying that joint tenancies are now in disfavor, and in most of the states statutes have been enacted modifying or abolishing them. Hill v. Breeden, supra; 14 Am.Jur., Cotenancy, §§ 11 and 12, pp. 82–85; 41 C.J.S. Husband and Wife § 31 pp. 440–442.

Whether a husband and wife take title by entirety to personal property transferred to them in their joint names has been held a question on which the authorities are in hopeless conflict. Ciconte v. Barba, 19 Del. Ch. 6, 161 A. 925, 926; 41 C.J.S. Husband and Wife § 35, p. 479. We are impressed with the long list of cases cited by counsel on both sides of this proposition, and with the endless array of annotations which have been compiled in support of both the pros and the cons. Cases on either side are well-reasoned, and it would be most difficult to determine whether the affirmative or negative of this proposition is favored in more jurisdictions. In any event, we can have more confidence in a decision based upon something other than a balance of conflicting authorities.

■ Wyoming has not joined those states which have seen fit to abolish joint tenancies or to establish a legal presumption against such tenancies. However, even at common law and as a general rule in those jurisdictions not otherwise controlled by statute, there are technical requirements of a joint tenancy or tenancy by the entirety. There are four essential characteristics of either tenancy, viz., (1) unity of interest, (2) unity of title, (3) unity of time, and (4) unity of possession. For a tenancy by the entirety, there is of course the additional characteristic of unity of person which exists only in the case of a husband and wife. Peters v. Dona, 49 Wyo. 306, 54 P.2d 817, 820; 41 C.J.S. Husband and Wife § 31, p. 442; 14 Am.Jur., Cotenancy, § 7, p. 81.

As stated in Annotation, 1 A.L.R.2d 249, and quoted with approval in Hartt v. Brimmer, supra, at 74 Wyo. 338, 287 P.2d 640–641:

"Numerous cases subscribe to the view that where from the language of the instrument it is evident that the parties thereto intended to create a right of survivorship, this intent will be given effect even though the instrument, by reason of the absence of one or more of the four unities of interest, time, title, and possession, did not create the common-law joint tenancy or tenancy by the entirety."

■ The foregoing logic and reasoning bring us to this conclusion: In order to create in Wyoming a joint tenancy or tenancy by the entirety, in personal property,

there must exist one of the following minimum requirements:

1. Each of the four unities of interest, time, title, and possession must be present, with the added unity of person for a tenancy by the entirety; or

2. In the absence of one or more of the first four unities, it must be evident from the language of the instrument itself that the parties thereto intended to create a right of survivorship.

In the Grabbert promissory note, the payees were not designated as husband and wife. Therefore, we need not decide and we will not decide whether such a designation could be considered sufficient, in the absence of one or more of the essential unities, to raise a presumption that the right of survivorship was intended. It is clear that nothing appears in the Grabbert note which could be construed as a prima facie showing of an intent to create a right of survivorship. Our remaining consideration, then, is whether or not each of the four unities are present to create a joint tenancy or tenancy by the entirety.

In Annotation, 1917C L.R.A. 550, 571, it is said that in the case of a joint-bank deposit payable to either, either party can at any time withdraw the entire deposit so that the joint property would be dissipated, and thereby a necessary incident of joint tenancy does not exist. The same statement is found in 7 Am.Jur., Banks, § 435, p. 307. If that be true with respect to a joint-bank deposit, it would also be true with respect to a promissory note. In Hill v. Breeden, supra, at 79 P.2d 486, it was pointed out that when a contract is payable to two or more persons jointly, payment may be made to either of them. Thus, as in the case of a joint-bank deposit, either of the obligees in a promissory note could collect and dissipate all or any part of the debt.

In Staples v. Berry, 110 Me. 32, 85 A. 303, 305, the Supreme Judicial Court of Maine declared a joint tenancy implies that the interests of the joint holders remain the same until death, and then the survivor takes all. Referring to the fact that either party could at any time withdraw the entire deposit, that court concluded: "This is utterly at variance with the attributes of a joint tenancy." See 41 C.J.S. Husband and Wife § 35, p. 484, n. 67, for holdings to the effect that during the joint lives of husband and wife an estate by entirety in personalty must be indissoluble except by the consent of both parties.

But even more fatal to the theory of a common-law joint tenancy in a promissory note is the fact that such an instrument is merely evidence of a debt—a chose in action. It is not an object of possession. A chose in action, as defined in Pan American Production Co. v. United Lands Co., 5 Cir., 96 F.2d 26, 27, is the antithesis of a chose in possession. See also Salvation Army, Inc. v. Hart, Ind.App., 149 N.E.2d 557, 569, Id., 239 Ind. 1, 154 N.E.2d 487, 496–497. In 73 C.J.S. Property § 9, pp. 176–177, it is said that the term includes a personal chattel not in actual possession, and that it has been held to include an evidence of indebtedness, whether note, bond, bill of exchange, or other instrument, and however secured.

Thus, the Grabbert promissory note being a chose in action and not property capable of being possessed, there is with respect to it an absence of unity of possession, and a common-law joint tenancy or tenancy by the entirety fails. Also, as already pointed out, neither such tenancy was created by the parties themselves because nothing appears in the instrument involved to evidence an intention to create a right of survivorship.

It must therefore be assumed that Hopkin intended to make his wife a gift of an undivided one-half interest in the note and nothing more. See Salvation Army, Inc. v. Hart, supra. See also Nussbacher v. Manderfeld, 64 Wyo. 55, 186 P. 2d 548, 554, wherein this court, at least impliedly, accepted comments from Restatement of the Law of Trusts to the effect that when one pays the consideration and takes title to property in the name of himself and

another jointly, he indicates an intention to make a beneficial gift of "an undivided interest."

*Conclusion*

We conclude that the orders appealed from must be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

Mr. Justice HARNSBERGER (dissenting).

This court has previously held that a conveyance to two persons who are husband and wife at the time property vests in them creates an estate by entireties. Peters v. Dona, 49 Wyo. 306, 54 P.2d 817; Ward Terry and Company v. Hensen, 75 Wyo. 444, 297 P.2d 213; Amick v. Elwood, 77 Wyo. 269, 314 P.2d 944.

The essential characteristics of an estate by the entireties are: (1) It can occur only between husband and wife and because, in contemplation of law, they are one person; (2) each is seized of all and not by one-half, or by any other portion of the property, as, for instance, in the case of an estate in common; and (3) the whole estate remains in the survivor. See 41 C.J.S. Husband and Wife § 34a, pp. 458–460, and Ballentine, Law Dictionary with Pronunciations, 2d Ed., "per tout et non per my", p. 963. This leaves inescapable the conclusion that where there is a tenancy by the entireties there is no property whatsoever remaining in a decedent, or in his estate, from which the homestead allowance can be set over to the survivor of the marriage.

Tenancy by the entireties is different from all other types of tenancy. While more similar to a joint tenancy with right of survivorship, than to other tenancies, it is different in at least two respects: (1) Because it occurs only when the tenants are man and wife, and (2) because the unilateral action of either tenant cannot destroy the tenancy or affect the title.

Section 2–213, W.S.1957 says:

" * * * When any resident of this state dies leaving a widower or widow, or minor children, the court shall set over to such widower or widow, if any, and if none, to such minor children, as their absolute property, all property of said decedent exempt from execution under the exemption laws of this state, including the homestead, and such property shall not be subject to the payment of debts of said decedent, except expenses of administration, or the last sickness of said decedent, and funeral expenses, in cases where there is not other property in said estate sufficient to pay said expenses; and in case decedent shall not have any or all of the property specified under said exemption laws, such widower, widow or minor children, as the case may be, shall be entitled to the value of such exempt property either in money or other property as they may prefer. Provided that, if such surviving spouse is not the parent of all or any such minor children, one-half of said property shall be set over to such surviving spouse and the other one-half to said minors who are not children of said survivor and a guardian shall be appointed for them as in any other cases of estate property descending to a minor. The right of a widower or widow to any of the property specified in this section shall in no case be affected by his or her renouncing or failing to renounce the benefit of the provisions made for him or her in the will of said decedent. (Laws 1919, ch. 28, § 1; C.S.1920, § 6879; R.S.1931, § 88–2904; Laws 1943, ch. 8, § 1; C.S.1945, § 6–1504.)"

In enacting this statute the legislature did not see fit to except from its requirement, for an allowance to surviving spouses, those instances where the surviving spouse was the owner of the property which was used as a homestead during the lifetime of the deceased, or cases where the title which deceased possessed during life became extinguished or terminated by death.

The majority opinion appends that exception to the statute. But to read such an

exception as that above noted into the statutory provision is patently judicial legislation which cannot be justified on any theory of the law's being so unclear as to require court interpretation, much less amplification or qualification.

The property to be set over to the widow and minor children under the provisions of § 2–213, W.S.1957, was not limited to the homestead, but consisted of "all property of said decedent exempt from execution." It, therefore, included, in addition to the homestead described in § 1–498, W.S.1957, the apparel described in § 1–504, W.S.1957, the articles mentioned in §§ 1–505 and 1–506, W.S.1957, as well as the property used in earning a living, as provided by § 1–507, W.S.1957.

The appellant's position, as well as the majority's decision, leaves unaltered the money award to the two minors, who were children of the deceased, but not children of the surviving widow. This gives a strange result. The court denies a money allowance to the widow in lieu of the homestead the statute says shall be set over to her. This is presumably because the decedent *does have* the homestead referred to in the statute. Yet the court leaves standing an allowance in money in lieu of such homestead to the children of the deceased by a former marriage which may be done only when the decedent *does not have* the homestead.

The opinion's assumption that § 2–213 must be construed along with applicable exemption laws because it pertains to property of decedent exempt from execution under such laws is of doubtful merit. The reference to the homestead exemption law, § 1–498, is merely to identify or describe the properties to be set over to the survivor or minor children. Section 2–213 neither amends, re-enacts nor repeals § 1–498. Aside from containing a description by reference, the only thing the first-named statute has in common with the latter is that they both exempt properties from execution. There is, however, neither ambiguity, uncertainty, conflict, nor overlapping in the exemptions given.

The court's majority overlooks or ignores a material difference between the homestead exemption statute and the homestead allowance statute in dispute here. Under the homestead exemption statute all that is preserved is the right of both spouses to use and occupy the premises free from levy and execution, irrespective of which of the spouses owns the property. But under the homestead allowance statute the surviving spouse receives the title itself to property which that spouse did not theretofore possess. This is a much greater right than is accorded under the homestead exemption law.

There is no dispute, that for purposes of the homestead exemption provided by § 1–498, it is immaterial which of the spouses owned the property claimed as a homestead, or as to whether the property was owned separately, jointly, in common, or by the entirety. If owned by either spouse, or by both spouses, in any type of tenancy, and used and occupied by the parties as a homestead, the property is to be protected and preserved from levy upon execution to the extent of the exemption value fixed by statute. But the homestead exemption law does not enlarge nor change the *title* by which the property is held. The most the exemption statute does is to protect the homestead property from being levied upon in execution. The other statute, however, gives as a special allowance to the surviving spouse or children, or both, a *title* to property which is to be taken from the estate of a deceased spouse. Under this last-named provision, if the decedent did not have the property referred to in the statute as the homestead, then the money provision in lieu thereof becomes operative. A person cannot be said to have property capable of being set over as an allowance from his estate when his entire interest in that property has terminated and been extinguished by death.

Although there may be a homestead in property, irrespective of the type of title possessed by either or both spouses, it would annul and defeat the only purpose of

§ 2–213 to say a surviving spouse is to be denied the benefit of the allowance provided by that statute in cases where the survivor was theretofore and remained the sole owner of the property used as a homestead. To reach such a conclusion, § 2–213 must be interpreted as meaning that in the event the title to the property belonged solely to the survivor, but had been devoted to homestead use, that use would of itself exclude the survivor from all benefits provided by the statute.

It seems axiomatic to say if property which had been used and occupied as a homestead was transferred inter vivos by the concurring acts of the parties, the entitlement of the grantors of that property under either the homestead exemption law, § 1–498, or the probate allowance statute, § 2–213, would be lost. It is just as reasonable to say that when the parties have provided for themselves, or have accepted a type of title which terminates as to one of the spouses immediately and forthwith upon and at the indivisible instant of that spouse's death, they have just as definitely and during their lifetime given their concurrent and mutual consent to the extinguishment of the title of the spouse who first dies.

There is a parallel between § 2–47, W.S. 1957, which denies a testator the right, as against the election of the surviving spouse, to deprive the survivor of certain portions of the estate of which the deceased died possessed. Section 2–213 just as definitely denies a testator the right to deprive the survivor of the allowance therein provided. This allowance may *not be taken into account* in computing the survivor's entitlement under § 2–47, even in the face of a contrary provision in the will of the deceased. Section 2–213 not only removes the properties covered by the allowance from the demands of creditors, it also removes that property from the deceased's right of testamentary disposition, the same as § 2–47, and even from distribution of the deceased's estate under statutes of descent.

As the majority decision deprives the widow of the right to have either money or other property set over to her in accordance with the requirement of § 2–213, it must be assumed the court has determined that her ownership of the homestead property satisfied the allowance mandate of the statute. This amounts to saying that the provision for an allowance to her by virtue of § 2–213 is fulfilled by setting over to and giving the widow property which she already owns, rather than by awarding her property which the decedent has. The effect of this is to imply a curtailment of the widow's title by the entirety, inasmuch as it indicates that title was imperfect or insufficient unless supplemented by the setting over directed by § 2–213. Of course that conflicts with the principle laid down in Amick v. Elwood, 77 Wyo. 269, 314 P.2d 944. In that case, title to property was attacked because it stemmed from a conveyance of property held by the entireties in which both husband and wife had joined, although the husband was subject to a judgment which was a lien against his properties. It was claimed that the lien of the husband's judgment creditor could be enforced as against the conveyance evidently on the theory the protection of the homestead exemption law was lost by transfer of the homestead property. Noting that the wife had the right to dispose of the property held by the entirety, with the consent of her husband, this court said, in commenting on Beihl v. Martin, 236 Pa. 519, 84 A. 953, 42 L.R.A., N.S., 555, at 77 Wyo. 278, 314 P.2d 947, " * * * if she could do so only subject to a judgment against the husband, her rights would be curtailed, and that the law does not allow that." Consequently, the court held that title to the property passed to the grantee, free and clear of any lien of the husband's judgment creditor. The principle thus announced was clearly this: The right of a tenant by the entireties cannot be curtailed by the extraneous event of there being a lienable judgment against one of the tenants even though the property was alienated by their joint conveyance.

So, in the instant case, the right of the surviving spouse to the complete title to the homestead property, freed of all previous

interest of the decedent, is curtailed if it is to be subjected to the allowance provided by § 2–213. It, therefore, seems untenable to insist that this widow's title by the entireties may be so encumbered by reason of its having been used and occupied as the homestead of the parties during the deceased's lifetime.

In Ward Terry and Company v. Hensen, 75 Wyo. 444, 451, 297 P.2d 213, 215, this court reiterated the basic law respecting tenancies by the entireties saying:

" ' * * * Under such a conveyance or devise husband and wife, by reason of their legal unity by marriage, take the whole estate as a single person with the right of survivorship as an incident thereto, so that if one dies, the entire estate belongs to the other *by virtue of the title originally vested.*' 26 Am.Jur. § 66, p. 692." (Emphasis supplied.)

This can mean but one thing. When one spouse dies, the title or interest of which the deceased was possessed during life *does not pass to the survivor*. The title or interest which the deceased owned or possessed simply became nonexistent. It was extinguished as completely as though it never existed. The survivor gained no new or additional title, but merely retained that which she had theretofore owned and possessed from the initial date of conveyance to her and her spouse by the entirety.

The effect of the court's majority decision is indeed far reaching. Under the majority's new rule, if the property used and occupied as a homestead by married persons had been the sole property of the wife, and the husband dies, neither the widow nor the deceased's minor children by a previous marriage may lawfully be entitled to have set over to them any allowance of property, or money, or other property from the estate of the deceased. The same will be true if the homestead property was held in common. We may also expect that where the homestead was in property wherein the deceased owned but a life estate, both the surviving spouse and the minor issue of a deceased's previous marriage will be deprived of the benefits of § 2–213, although they will no longer have even the right to use and occupancy of the property which was their homestead before the death of the deceased.

If more is needed to question the correctness of the decision, the Wyoming case of In re Bergman's Survivorship, 60 Wyo. 355, 377, 151 P.2d 360, 368, is called to attention. There the Chief Justice, with the entire court concurring, wrote:

" * * * A homestead, *if the title is in the name of the deceased,* is a part of his estate but is set aside as exempt through favor of the statute [§ 2–213, W.S.1957] to the surviving spouse and minor children. * * *" (Emphasis supplied.)

This obviously recognized that the homestead reference in § 2–213 was to a homestead in the property *owned by the decedent*. The opinion further said respecting tenancies by the entireties:

" * * * The property becomes the absolute property of the survivor upon the death of a spouse and *is not a part of the estate of the latter.* * * *" (Emphasis supplied.)

The opinion of the majority labors the question of a home occupied during marriage as being a homestead in contemplation of our exemption laws, irrespective of whether owned by either or both spouses. This dissent does not question that point, but insists it is foreign to the issue involved.

No authority is offered in support of the opinion which touches the real point to be decided. The decision here must be arrived at solely from a consideration of what our statutes plainly say—not from what may judicially be written into them.

There is no criticism of the majority's decision respecting the Grabbert Note. The decision of the lower court should otherwise be affirmed.