BLANCHE A. GRAHAM, administratrix, *vs.* CLARENCE A. BARNES & another.

Suffolk.    January 19, 1927. — May 20, 1927.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & WAIT, JJ.

*Gift. Joint Tenants and Tenants in Common. Equity Pleading and Practice,* Findings by judge.

Joint tenancies may be created in securities and other personal property as well as in real estate.

In a suit in equity by an administrator to gain possession of bonds in the sum of $7,000, there was evidence that the plaintiff's intestate, when sixty-two years of age and married, after an acquaintance of two years had lived with a woman thirty-one years younger, the defendant, during which time at his request she had ceased working in a factory and had accepted a weekly cash allowance and valuable presents from him and had travelled with him as his wife; that he had told her at different times that he intended to obtain a divorce from his wife and to marry her, and even had promised to do so; that after two years' acquaintance the intestate, stating to her that he would give her $3,000 in cash and $7,000 in bonds, gave her the money and placed negotiable bonds in a safe deposit box which had been hired of a bank under an agreement that access should be given to the intestate and to the woman "jointly" and that "right of access or control shall not pass to the legal representatives of a deceased safeholder but shall remain exclusively in the survivor or survivors"; and that two keys furnished by the bank were delivered to and kept by the defendant. The judge found that a joint tenancy in the bonds was created in the intestate and the defendant and that on his death they became hers. A final decree dismissing the bill was entered and the plaintiff appealed. All the evidence was reported. *Held,* that

(1) The findings on the evidence could not be said to be clearly wrong' and they must stand;

(2) On the death of the intestate, the defendant became vested with the entire title and ownership of the bonds;

(3) The decree was affirmed.

BILL IN EQUITY, filed in the Superior Court on February 8, 1926, by the administratrix of the estate of Eugene Thornton Adams, late of Brookline, against Clarence A. Barnes and Janie B. Lavalle to recover possession of seven United States Liberty coupon bonds of $1,000 each.

In the Superior Court, the suit was heard by *McLaughlin*, J., a stenographer having been appointed under G. L. c. 214, § 24, Equity Rule 29 (1926). It appeared that the plaintiff's intestate died on October 28, 1925. Material facts found by the judge are stated in the opinion. By order of the judge a final decree was entered dismissing the bill. The plaintiff appealed.

*T. W. Proctor*, (*A. T. Johnson* with him,) for the plaintiff.

*F. W. Fisher*, (*C. A. Barnes* with him,) for the defendants.

CROSBY, J. This is a bill in equity brought by the administratrix of the estate of Eugene T. Adams to recover possession of seven United States Liberty coupon bonds of $1,000 each. The defendant Janie B. Lavalle contends that the title to the bonds is vested in her. She will hereafter be referred to as the defendant. The case was tried before a judge of the Superior Court who found that the bonds and coupons attached were the property of the defendant and ordered the bill dismissed without costs.

The evidence, which is reported, warranted a finding of the following facts: Eugene T. Adams, in the fall of 1915, when he was about sixty years of age, became acquainted with the defendant who was then about twenty-nine years old; at that time she worked in a box factory and lived with her mother and a niece and nephew. Adams and the defendant became intimate and were frequently in the company of each other. A few months after their acquaintance began, at his request, she gave up work and he made her a weekly cash allowance and from time to time gave her valuable presents. They took frequent trips together travelling as husband and wife.

The defendant testified that a few months after their acquaintance began Adams told her at different times that he intended to obtain a divorce from his wife and to marry her, and often promised to do so; that early in 1918 he told her he would give her $3,000 in cash and $7,000 in Liberty bonds, and the next day he gave her $3,000 in bills which she deposited in her name in two banks; that at that time he owned three nonnegotiable $1,000 Liberty bonds; that on March 29, 1918, he withdrew $4,000 in cash from a bank,

and on the same day they went together to the Common-
wealth Trust Company, in Boston, where they received the
seven $1,000 bonds involved in this suit in return for the
three $1,000 nonnegotiable bonds and $4,000 in bills and
$47.91 which Adams paid; that they went to the Security
Safe Deposit Company in Boston and there hired a box in
their joint names in the vault of that company and placed
the seven bonds in the box.  She further testified that a
few days before March 29, 1918, when the bonds were so
deposited, Adams brought the three nonnegotiable $1,000
bonds and the $4,000 in bills to her house in Haverhill and
gave them to her, and that they then went to Boston and
left them with the Commonwealth Trust Company and
ordered the seven bonds; that when she received the bonds
Adams advised her that they should be placed in "a joint
box and he could have access to it so that if I was tempted
he could advise me in spending it," to which arrangement
she consented; and that he told her that in the event of his
death she could go to the box and get the bonds upon show-
ing a certificate of his death.

When the box was engaged and the bonds were placed in
it, a card was furnished by the bank and signed by the
defendant and Adams, on which was the following: "Safe
No. 5545 Title (Mrs.) Janie B. Lavallee and Eugene T.
Adams  From Mch. 29 1918 to Apl. 1 1919 Rate $10 Pass-
word Northport . . . Mch. 29 1918.  We hereby direct and
agree that access to this safe shall be by the above named
jointly.  Mrs. Janie B. Lavallee Eugene T. Adams."  On
the reverse side of the card was the following, excepting
certain terms and provisions respecting the use of safes
which are not material.  "Safe No. 5545 Title (Mrs.) Janie
B. Lavallee and Eugene T. Adams From Mch. 29, 1918 to
Apl. 1, 1919 Rate $10 Password Northport  We hereby
accept the use of the above safe subject to the Terms and
Provisions hereinbefore set forth, and to all reasonable
rules and regulations of the said Security Safe Deposit Com-
pany now or hereafter in force, and acknowledge receipt of
2 keys thereto.  Date 3/29/18  Witness M. A. Kenney
Signature Mrs. Janie B. Lavallee Eugene T. Adams."  Two

keys to the safe were furnished by the bank, both of which were delivered to and kept by the defendant. The receipt for the rent of the safe contained the following provision: "In cases where a safe is held by two or more, right of access or control shall not pass to the legal representatives of a deceased safeholder but shall remain exclusively in the survivor or survivors." The defendant testified that during the entire time the safe was rented she paid each year the rental, and there was no evidence to the contrary. On two occasions the defendant and Adams visited the box together and cut off and cashed coupons that had become payable.

The trial judge made the following and other findings: "In March 1918 he [Adams] formed the intention of creating a fund for her benefit in the amount of $10,000. In the execution of this purpose, he gave her $3,000 outright in bills, which she deposited to her credit in certain banks in Haverhill, but intended, as I believe, that the balance of the fund, composed of the seven Liberty bonds which this suit concerns, should not, while he lived, pass wholly out of his control, and that during his life the property in them should not be exclusively hers. Without going into the details of Mrs. Lavalle's testimony, it might be found, if her account of the matter were taken as substantially true, that before the bonds were placed with the depositary, Adams delivered them to her by way of gift, and that when they were placed in the box they were her property. Upon all the evidence, however, I do not find that he made a gift to her of the bonds before they were deposited in the box, and I do find that immediately before they were placed there, they were his sole property, and that from the time he originally acquired title to them and until he placed them in the care of the depositary under the circumstances related below, he was the exclusive owner of them. On March 29, 1918, in the execution of a plan and purpose on the part of both to convert the sole and exclusive ownership of Adams, into a joint ownership on the part of both Adams and Mrs. Lavalle, with the inherent right of sole and exclusive ownership on the part of the survivor, Adams and Mrs. Lavalle visited the offices of the Security Safe Deposit Company in Boston and

there entered into an arrangement in writing with the company for depositing the bonds in their joint names. . . . In view of this contract, and in the light of all the other circumstances in the case, I find and rule that a joint tenancy was created in the bonds and coupons annexed thereto, and that by virtue of the contract of Adams and Mrs. Lavallee with the Safe Deposit Company and their understanding with each other, the survivor would become the exclusive owner of the bonds and of the coupons annexed thereto at the time of the other's death. . . . Therefore, I find and rule that on the death of Adams, the defendant Lavallee became the sole owner of the bonds and any unused coupons."

All the evidence, both oral and documentary, is before us. We have carefully examined it, and cannot say that the findings are plainly wrong; accordingly they must stand. *Harvey-Watts Co.* v. *Worcester Umbrella Co.* 193 Mass. 138. *Nichols* v. *Atherton,* 250 Mass. 215, 217. The finding, that a gift of the bonds was not made to the defendant before they were deposited in the box and up to that time Adams remained the exclusive owner of them, does not affect the further finding that, after they had been so deposited, the parties entered into an arrangement in writing with the bank to deposit the bonds in their joint names and a joint tenancy was thereby created under which the survivor became the exclusive owner. Upon all the evidence this finding was warranted. Upon the death of Adams the defendant became vested with the entire title and ownership of the bonds. *Phelps* v. *Simons,* 159 Mass. 415. *Attorney General* v. *Clark,* 222 Mass. 291. *Chippendale* v. *North Adams Savings Bank,* 222 Mass. 499. *Marble* v. *Treasurer and Receiver General,* 245 Mass. 504. *Battles* v. *Millbury Savings Bank,* 250 Mass. 180, 187. *Perry* v. *Leveroni,* 252 Mass. 390, 393. *Chase* v. *Smith,* 257 Mass. 252.

There is no difference in the governing principles of law between a gift of a deposit in a savings bank and a gift of securities deposited in a national bank or a trust company like that in the case at bar. *Phelps* v. *Simons, supra. Simpkins* v. *Old Colony Trust Co.* 254 Mass. 576. Joint

tenancies may be created in securities and other personal property as well as in real estate.  *Boland* v. *McKowen,* 189 Mass. 563.  *Attorney General* v. *Clark, supra.*  "It is settled in this Commonwealth that an unregistered bond, . . . like a chattel may be the subject of a legal gift *inter vivos* or *mortis causa.*"  *Mangan* v. *Howard,* 238 Mass. 1, 5.

The case of *Simpkins* v. *Old Colony Trust Co., supra,* is not at variance with what is here decided.  In that case it was held that there was no gift either *inter vivos* or *mortis causa.* The present case is distinguishable in its facts and on the issues from those appearing in *Otis* v. *Freeman,* 199 Mass. 160.

In view of all the evidence, the trial judge warrantably found that a joint tenancy was created in the bonds and coupons attached thereto, and that, by virtue of the contract of Adams and the defendant with the Security Safe Deposit Company, it was the intention of the parties that the survivor would become the exclusive owner of the property at the time of the other's death.

Let the entry be

*Decree affirmed.*