### LILLY v. SCHMOCK.

1. Husband and Wife—Estates by Entireties.

An estate by entireties refers to a form of co-ownership of property held by husband and wife with right of survivorship.

2. Banks and Banking—Deposit Boxes—Joint Tenancy.

In action by administrator of estate of deceased grandfather of defendant wife for amount of currency removed from safety deposit box after death of grandfather by defendants who claimed right thereto as joint tenants with right of survivorship, evidence *held,* to show deceased had effected such a change in signature cards relative to right to use of box as to change defendants' relation from that of deputies to joint tenants with right of survivorship.

3. Property—Right of Survivorship in Personalty.
   The creation of the right of survivorship in personal property
   is not forbidden by the law of this State where it is created
   by the express act of the parties.

Appeal from Kent; Verdier (Leonard D.), J. Submitted April 9, 1941. (Docket No. 41, Calendar No. 41,541.) Decided May 21, 1941.

Assumpsit by Norman A. Lilly, administrator of the estate of William I. Gelnaw, deceased, against Richard O. Schmock and Olive M. Schmock for moneys allegedly belonging to the estate. Judgment for defendants. Plaintiff appeals. Affirmed.

*Nathan C. Snyder,* for plaintiff.

*Warner, Norcross & Judd,* for defendants.

McAllister, J. On August 2, 1932, William I. Gelnaw, a man 86 years of age, was living with his granddaughter, Olive M. Schmock, and her husband, Richard O. Schmock, in the city of Grand Rapids. He had two sons, who did not reside in that city, and apparently preferred to make his home with his granddaughter, paying $50 a month for his board and room. On the above-mentioned date he leased a safe deposit box at Old Kent Bank, and in his application for the lease designated Mr. and Mrs. Schmock as his deputies, signing the following statement:

"The undersigned hereby appoints Richard O. or Olive M. Schmock as the deputy of the undersigned and authorizes said deputy to exercise all of the rights of the undersigned with respect to the

safe leased by the undersigned, including the right to make deposits therein, or withdrawals therefrom, or terminate the lease and surrender the safe, the authority of such deputy to continue until such time as his appointment is revoked in writing signed by the undersigned and delivered to you.''

A ''signature card'' was then signed by Richard O. Schmock and Olive M. Schmock, therein designated as deputies, and by Wm. Gelnaw; and a safe deposit contract was signed on behalf of the bank by E. M. Dixon.

Mr. Gelnaw used the box almost once a month; and on or about November 12, 1934, more than two years after he first leased it, he came into the bank with his granddaughter and requested certain information from Mr. Dixon, who had charge of the safe deposit vault. Mrs. Schmock did not participate in the conversation, but ''withdrew from the talk.'' Mr. Gelnaw asked under what conditions the box was rented and was told by Mr. Dixon that it was an individual box with two deputies who had the same right, as far as the bank was concerned, during Mr. Gelnaw's lifetime to remove everything and close the box, but that, in case of his death, the bank would require an order from the probate court before it would allow anyone to enter the box. Mr. Dixon's testimony goes on:

''He said, 'How can I fix it so that they—' Can I explain?

''Q. Just tell us what you explained—in detail.

''A. I explained that if they rented the box as joint tenants by the entireties, that in the case of death, we would allow the survivor to enter and remove the contents without an order from the probate court.

''Q. What did he say with respect to that?

''A. He said, 'That is what I want.'

"*Q.*  Did you have any doubt in your mind at that time about his understanding and knowing what he wanted?

"*A.*  I thought that was what he wanted so I made the change.

"*Q.*  Well, was there any doubt in your mind about it, about his knowing what he wanted?

"*A.*  No, not a bit.

"*Q.*  So that you made the change then?

"*A.*  I cancelled the authorization of the parties as deputies and entered into a joint tenancy arrangement.

"*Q.*  By cancelling the authorization as deputies, you refer to your marking the card Exhibit 2 as out in red pencil and new card?  .

"*A.*  Yes.

"*Mr. Snyder:* Just a minute. I have absolutely no objection to his testifying what he did with the card, but I think as to the question as to whether or not he terminated the deputyship and created a joint tenancy is a conclusion of law.

"*Mr. Norcross:* Well, I am just trying to get at what he did.                        .

"*Q.*  That is what you did?

"*A.*  That is what I did."

The way in which the representative of the bank carried out Mr. Gelnaw's wishes, was to cancel the "signature card" which had been signed by Mr. and Mrs. Schmock, as deputies, and by Mr. Gelnaw. In its place a new card was issued, on which Mr. Dixon stamped the words, "either or survivor," and over these words Mr. Gelnaw and Mr. and Mrs. Schmock affixed their signatures.

After the death of Mr. Gelnaw on June 6, 1935, the sum of $2,340 in currency was removed from the box by Mr. and Mrs. Schmock. The administrator of Mr. Gelnaw's estate sued to recover the above amount from the Schmocks. The trial court held

that the defendants were entitled to the contents of the box as joint tenants with right of survivorship. In this judgment there is no error.

The evidence is clear that in the conversation at the time the new signature card was issued, it was the agreement between Mr. Gelnaw, the Schmocks, and the bank that Mr. Gelnaw and the Schmocks were to be joint tenants with right of survivorship. The former card, in which the Schmocks were named deputies, was cancelled. Mr. Gelnaw signed the new card, stamped "either or survivor." The fact that the original application appointing the Schmocks as deputies was not cancelled, is of no consequence; nor is the fact that a new safe deposit contract was not executed by the bank. The agreement under which the box was held was changed by the action of Mr. Gelnaw and the Schmocks. The representative of the bank carried out the suggestions of Mr. Gelnaw in the manner above described. It is indisputable from the evidence that these parties intended to be joint tenants with right of survivorship. There is no claim of fraud, duress, or that Mr. Gelnaw was incompetent.

It is true that an estate by entireties refers to a form of co-ownership held by husband and wife with right of survivorship; and the use of the term by Mr. Dixon in his conversation with Mr. Gelnaw, at the time the new signature card was signed, might be termed a misnomer. But there can be no doubt of what was intended; the parties were to be joint tenants. The words, "by the entireties," clearly referred to a right of survivorship; and when Mr. Gelnaw signed the signature card, he affixed his signature over the words, "either or *survivor*."

Cases are cited by plaintiff holding that, where the words, "either or survivor," are stamped over

the signatures of the application for a safe deposit box, the deposit does not thereby become a joint deposit with right of survivorship; and reference is made to other cases to the same effect, where a safe deposit box was held by joint lease. But these decisions can be said to rest upon the ground that no sufficient evidence established that the parties intended that the deposit should be held jointly. In this case, when the agent of the bank explained to Mr. Gelnaw that "if they rented the box as joint tenants by the entireties," the Schmocks could remove the contents in case of his death, his reply was, "That is what I want." This evidence establishes the intent to create a joint tenancy with the right of survivorship.

In the case of *In re Peterson's Estate,* 239 Mich. 452, 454, it is said:

"The bench law of this State does not forbid 'the creation of the right of survivorship in personalty where it is created by the express act of the parties,' and 'the statute nowhere forbids it.' *Lober* v. *Dorgan,* 215 Mich. 62. Mr. Peterson deposited the bonds in the names of himself and wife. He directed the depositary to surrender them either to himself or his wife, or the survivor of them. He placed the key in their bedroom to the knowledge of both of them. He or his wife at any time might have withdrawn the bonds. He did all that he could to carry out his intention. He intended to give to her a present interest in the bonds equal to his own, and, in the event of his death, which he must have anticipated, to give her the entire fund. He parted with dominion over the property to the full extent permitted by a transaction of this character. There was delivery."

It may be remarked, as strongly urged by plaintiff, that in the *Peterson Case* there was testimony

that the party making the deposit had stated that, in case of his death, he wanted the contents of the box to belong to his wife; and while this can be said to be stronger evidence as a statement of intent than in the present case, it does not derogate from the reasons for our conclusion.

It is further urged that, while statutes permit the creation of a joint estate with right of survivorship in personalty in the case of bank deposits and in certain other instances, there is no statutory authority to permit the creation of such an estate with regard to property in a safe deposit box. But neither the statutes nor the decisions of this court forbid the creation of a right of survivorship in personalty where it is provided by the express act of the parties. In *Negaunee National Bank* v. *LeBeau,* 195 Mich. 502 (L. R. A. 1917D, 852), this court permitted a bank deposit to pass to the survivor, independently of statute.

The judgment of the circuit court is affirmed, with costs to defendants.

SHARPE, C. J., and BUSHNELL, BOYLES, CHANDLER, NORTH, WIEST, and BUTZEL, JJ., concurred.