PEARL HARTT,

*Plaintiff and Appellant,*

vs.

CLARENCE A. BRIMMER and ROBERT BIBLE, Executors of the Estate of John K. Hartt, Deceased,

*Defendants and Respondents.*

(No. 2680; Sept. 13, 1955; 287 Pac. (2d) 638)

For the plaintiff and appellant the cause was submitted upon the brief of Pence & Millett of Laramie, Wyoming, and Senior & Senior of Salt Lake City, Utah, and oral argument by Mr. Francis M Gibbons of the firm of Senior & Senior.

For the defendants and respondents the cause was submitted upon the brief of Clarence A. Brimmer, Jr., of Rawlins, Wyoming, and Lathrop & Lathrop of Cheyenne, Wyoming, and oral argument by Mr. Carleton A. Lathrop and Mr. Clarence A. Brimmer, Jr.

340

OPINION

BLUME, Justice

The action herein was commenced on November 21, 1953. An amended petition was filed on March 10, 1954, in which the plaintiff alleged substantially the following facts. Plaintiff is the widow of John K. Hartt, deceased; that deceased died on or about July 14, 1952, leaving a last will and testament dated March 14, 1951; that on August 21, 1952, the will was duly admitted to probate in the district court of Carbon county, Wyoming, and the respondents herein were appointed executors and have duly qualified; that for many years prior to December 6, 1951, decedent leased in his sole name safe deposit box No. 301 from the First National Bank of Rawlins, Wyoming; that on or about December 6, 1951, decedent and the plaintiff herein became co-lessees of said deposit box; that the contract with the bank by these co-lessees was as follows:

"1.   No person other than the Lessee, his duly appointed deputy as shown by the records of the Safe Deposit

Department or the legal representative of the Lessee in the event of his death, incompetency, insolvency or other disability, shall have access to the box, except as hereinafter expressly stipulated.

"2. The Lessor, having no control or possession of a Box will be liable only for ordinary diligence in preventing the opening of it by an unauthorized person, and shall not in any event be liable for the loss or alleged loss of any of its contents. The opening of a box by an unauthorized person shall not be inferred from the loss of any of its contents.

"3. The Lessor will retain no keys to any rented box and will at all times remain wholly ignorant as to its contents. Upon surrender of a Box both keys must be returned to the Lessor. The cost of replacing lost or broken keys and forcing open boxes shall be paid by the Lessee.

"4. All rentals are payable yearly in advance. In event the lease of the box is not renewed within three months after expiration of the term paid for, the Lessor reserves the right to refuse admission thereto and may, at the expense of the Lessee and without notice, open same and hold the contents thereof in such manner as it may deem best until all accrued rent and charges are paid; in which event all liability of the Lessor in relation to such contents shall cease immediately and absolutely upon the opening of the Box. The Lessor reserves the right to terminate, at any time, the lease and possession of a Box upon notice mailed to the Lessee at his last given address or otherwise given him, his deputy or legal representative in which event the pro-rata unearned portion of the rental paid will be refunded.

"5. In event of the death of the Lessee or his deputy the survivor shall notify the Lessor immediately and access shall not be allowed to the box until the Lessor has been released from liability under the provisions of the Inheritance Tax Laws of the United States and the State in which this Lessor is located.

344

"6. Access to a Box allowed only during the regular business hours of the Safe Deposit Dept.
"/s/ James Engstrom, Witness.

"The undersigned in consideration of the letting of a Safe Deposit Box by the FIRST NATIONAL BANK OF RAWLINS, hereby acknowledges receipt of two keys thereto and certifies that he (they) has (have) read and approved the rules governing Safe Deposit Boxes, and also agrees to pay rental for said box annually in advance and to accept said lease and use of said box in accordance with the rules of the Bank.
"/s/ John K. Hartt, Lessee        Deceased 7-14-52
      Mrs. John K. Hartt, Lessee"

Beneath the signatures of the parties was stamped the following:

"As joint tenants with right of survivorship and not as tenants in common."

In the safe deposit box were decedent's notes and certificates of shares of stock in various companies including 1000 shares of General Motors Corporation and 1000 shares of Swift and Company, all in the name of decedent.

The amended petition further alleges that on December 6, 1951, the decedent and plaintiff became joint tenants in the safe deposit box with the right of survivorship; that defendants in their capacity as executors have filed an inventory, including the stock certificates and notes contained in the safe deposit box and removed these notes and certificates from the box and claim that they are the property of the estate of John K. Hartt, deceased; that plaintiff has made demand on the defendants for the property but they have refused and have failed to deliver same to the plaintiff. Plaintiff accordingly prayed that she be declared to be the sole owner of the certificates and notes contained in the deposit box and that defendants be required to deliver them to her.

Defendants filed an answer admitting that they are the executors of the estate of John K. Hartt, deceased; that the deceased died as above mentioned; that the will was admitted to probate as stated in the amended petition; that the deposit box contained stock certificates and notes heretofore mentioned, all belonging to decedent; that decedent and plaintiff became co-lessees of the box as above mentioned in the petition, but did not become joint tenants as to the contents thereof; that they filed an inventory in the estate containing the securities above mentioned of which they had taken possession, administered the estate, are ready to close it, and that plaintiff is guilty of laches in bringing this action and has acquiesced in the probate proceedings of decedent's estate. Defendants prayed that plaintiff be denied any relief.

The court rendered judgment in favor of the defendants and dismissed the plaintiff's petition. We may incidentally mention the fact that a second cause oi action was alleged by plaintiff and appellant herein claiming that the property above mentioned became her property as a gift causa mortis but this claim appears to have been abandoned. From the judgment rendered as above mentioned, the plaintiff has appealed to this court by direct appeal.

It is the contention of the appellant that since the deposit box in question was leased by the decedent in his own name prior to December 6, 1951, and in view of the fact that thereafter decedent and appellant became co-lessees and that appellant had access to the box and could have removed the securities in the box at any time as joint tenant, she became the sole owner of the securities after the death of the decedent by reason of the right of survivorship, as mentioned in the stamped words heretofore set out. Counsel for appellant call our attention to the fact that the contract with the bank

should be construed in the light of circumstances surrounding the parties when the contract was made. 17 C.J.S. 744, 746. Unfortunately, however, we have been left in the dark as to a number of facts and circumstances which might throw light on the case before us. We know for instance that decedent left a will dated March 14, 1951, but we know nothing of the contents of the will except that it may be inferentially gathered from the answer of the executors herein that the property was left to the individual executors as trustees under the will. It was stated by counsel in oral argument herein that the value of the contents of the deposit box was approximately a million and a half dollars. We are left in the dark as to the age of the decedent and of the appellant herein. If we may take into consideration what was disclosed by the case argued at the same time as the case at bar, decedent and appellant have five living children, all daughters. We do not know their ages, although it seems they are all married. We know nothing of the attitude of the decedent toward these daughters or theirs toward him. If appellant's contention herein were sustained, these daughters would all be disinherited. It appears herein that appellant had some property in her own name, but we do not know the amount thereof. It appears herein that appellant never opened the deposit box in question until long after the decedent had died and she also testified that she did not remember signing the contract with the bank above mentioned.

The question before us is part of the larger question relating to the method of creating a joint tenancy with the right of survivorship in personal property. Most of the cases on the subject, and they are numerous, deal with bank accounts and certificates of deposit. See Annotation, 48 A.L.R. 190; 66 A.L.R. 891; 103 A.L.R. 1133; 135 A.L.R. 993; and see discussion in 7 Am. Jur. 307, 308. Counsel for defendants contend no such joint

tenancy with right of survivorship can be created unless there exists unity of interest, title, time and possession and that these unities do not all exist in the case before us. They say that our statute has relaxed the rule only as to bank accounts when it provides in § 35-148, W.C.S. 1945, that when a deposit has been made in the name of two persons, payable to either or the survivor, payment to either protects the bank. See as to that matter 48 C.J.S. 919 to 924. However, we find it stated in Annotation, 1 A.L.R. 2d 249:

"Numerous cases subscribe to the view that where from the language of the instrument it is evident that the parties thereto intended to create a right of survivorship, this intent will be given effect even though the instrument, by reason of the absence of one or more of the four unities of interest, time title, and possession, did not create the common-law joint tenancy or tenancy by the entirety."

See our incidental remark in this connection in Hill v. Breeden, 53 Wyo. 125, 139, 79 P.2d 482. It is not, we think, necessary to decide the instant contention of counsel for defendants, and so we think it best not to do so.

The first case similar to the case at bar, where two parties rented a deposit box, is the case of Mercantile Safe Deposit Co. v. Huntington, 89 Hun. 465, 35 N.Y.S. 390, 391, where the court stated as follows:

"We think it would be a proposition which would somewhat astonish the renters of boxes in safe-deposit companies, if it should be held that, when two combine to rent a safe, the presumption would be that there was a joint ownership in all the property contained therein, even though the names of the renters were disjunctively associated."

In the case of Bauernschmidt v. Bauernschmidt, 79 Md. 35, 54 A. 637, 638, 643, 644, a safe deposit box was rented by husband and wife under the following agreement:

"We agree to hire and hold safe No. 4,392, or any safe for which it might be exchanged, as joint tenants, the survivor or survivors to have access thereto in case of death of either."

The property in the safe deposit box belonged to the husband. The wife claimed ownership thereto after the death of the husband by virtue of the right of survivorship. The court denied the contention of the wife stating in part:

"By the terms of the renting, box 4,392 could have been entered by husband and wife severally, and upon the death of either the survivor was entitled to have access to it. This arrangement wrought no change in the dominion which George Bauernschmidt previously had over the property. He could have taken every bond and certificate of stock out of the box without the assent, or even against the protest, of his wife, and could have disposed of them just as he pleased. The fact that the wife had a key to the box, did not place any restriction on the husband's control over the property contained in the box, and it cannot be asserted, as a legal postulate, that a mere right of access to the box on the part of the wife during the husband's life changed the title to the contents of the box. * * * It is the existence, and not the exercise, of locus peniteniae, which defeats a gift inter vivos. 'There is no case which decides that the donor may resume the possession and the donation continue.' Bunn v. Markham, 7 Taunt. 224."

In Security-First Nat. Bank of Los Angeles v. Stack, 32 Cal. App. 2d 586, 90 P.2d 337, 340, husband and wife jointly rented a safe deposit box and the contract stated in part:

"Upon the death of either of us, the survivor is and shall for every purpose be the sole renter of said box, with the exclusive right of access thereto and possession of the contents thereof."

The court denying the right of survivorship in the contents of the box stated that:

"* * * by the terms of the rental agreement the

survivor acquired merely access to the box and possession of the contents. The title to the contents manifestly cannot be affected by such phraseology, under the circumstances here presented."

This holding was affirmed by subsequent cases from California. See Note, 14 A.L.R. 2d 955.

In the case of In re Brown, 86 Misc. Rep. 187, 149 N.Y.S. 138, 139, 140, subsequently affirmed by the appellate court of New York (see Note, 14 A.L.R. 2d 955), the husband and wife rented a safe deposit box, the contract for which contained the following terms:

"We agree to hire and hold safe No.......... as joint tenants, the survivor or survivors to have access thereto in case of death of either; but either to have power to appoint a deputy."

The court denying right of survivorship in the contents of the box stated as follows:

"The inquiry then reverts to the construction of the lease which both parties signed. It has not been possible to find that this was anything more than an agreement to hold the box together and to permit access thereto by each other. The declaration of the husband that 'what is yours is mine, and what is mine is yours,' is too much like the amiable nullity which the husband addresses to the bride at the altar, 'With all my worldly goods I thee endow.' The one imparts to the ceremony an idle charm which the other carries into the trials of life, but neither has enough of precision and active intention to alter rights of property."

In the case of In re Wohleber's Estate, 320 Pa. 83, 181 A. 479, 480, 101 A.L.R. 829, the court states as follows: "A joint lease of a safe deposit box is not of itself sufficient to establish joint ownership of securities found therein which originally belonged to one of the lessees alone, even though the joint lessees were husband and wife."

In Annotation, 14 A.L.R. 2d 954, the author states as follows:

"In a clear majority of jurisdictions where the point has arisen, deposit of articles in a jointly leased or used safe-deposit box of itself works no change in title unless there is an express agreement that the contents of the box shall be joint property. Language in a lease descriptive of joint tenancy or of the incident of survivorship, unless indubitably referable to the contents, is generally construed as running no farther than use of the box. And words to the effect that the survivor shall have right of possession and removal of contents are literally construed, so that the decedent's personal representative may require surrender of effects traceable to the decedent's ownership."

Cases are cited from California, Illinois, Maine, Maryland, New Jersey, New York, Pennsylvania and Rhode Island, including the cases heretofore mentioned. We think the rule so laid down is sound and we adopt it. It is sustained by some of the cases relating to bank accounts.

Thus in the case of Cerny v. Cerny, 152 Fla. 333, 11 So. 2d 777, 778, the court stated as follows:

"The signature card provides that the funds on deposit shall be 'payable' to either or the survivor but since the purpose of such agreements is to comply with Section 653.16 Florida Statutes of 1941 relating to banking regulations, they will not be construed as vesting title or creating a right of survivorship on the part of a joint depositor unless it contains unequivocal language to show that the survivor of two persons having a joint bank account takes title at the death of the other. The signature card in question does not show this so it will be construed as nothing more than a banking facility." See also Sinift v. Sinift, 229 Iowa 56, 293 N.W. 841, 854.

Counsel for plaintiff and appellant have cited us to a number of cases involving co-lessees of a deposit box, and in which the survivor was held entitled to the contents of the box. But they present a situation different

from that in the case at bar. Thus in Brown v. Navarre, 64 Ariz. 262, 169 P.2d 85, 86, the contract was:

In Young v. Young, 126 Cal. App. 306, 14 P.2d 580, 583, the contract read:

"We hereby declare that all the contents of said safe now and hereafter placed therein, are our joint property and that the title and right of ownership thereto and to the whole thereof rests in the survivor of us as his or her separate property."

In re Koester's Estate, 286 Ill. App. 113, 3 N.E. 2d 102, the parties had agreed:

" * * * upon the death of any one or more of the lessees, and upon every such death the title to all property then contained in said safe or the safe for which it is exchanged shall be in the survivors jointly, with the right of survivorship therein * * * ."

In re Raggi's Estate, 171 Misc. 836, 13 N.Y.S. 2d 691, the clause of survivorship provided:

"In case the lessees are husband and wife, it is hereby declared that all property of every kind at any time heretofore or hereafter placed in said box is the joint property of both lessees and upon the death of either passes to the survivor."

The case of In re Gaines' Estate, 15 Cal. 255, 100 P.2d 1055, was decided under a statute which provided that the making of a bank deposit in the form of joint tenancy with the right of survivorship should be conclusive evidence of the intention of the depositors to vest title in the survivor. The case involved a bank account. In re Peterson's Estate, 239 Mich. 452, 214 N. W. 418, it appears the cashier of the bank testified that the agreement of the co-lessees was that in case of death of either the contents should belong to the survivor. In Graham v. Barnes, 259 Mass. 534, 156 N.E. 865, the agreement specifically provided that upon the death of a co-lessee the control of the box, or access thereto,

should not pass to the personal representative but to the survivor. The foregoing cases are not in point or controlling herein. They merely show that the parties may make a contract providing for the right of survivorship as to the contents of a deposit box. In Lilly v. Schmock, 297 Mich. 513, 298 N.W. 116, the court concluded that under the circumstances appearing in that case, it was clear that the intention of the parties was that the contents of the safe deposit box should become the property of the survivor. It is not necessary to set out the various circumstances herein. The case should be read in full.

In the case at bar no intention can be gathered under the facts herein that the contents of the deposit box should become the property of the appellant as survivor, for the following reasons:

First. The contract with the bank does not say so. It cannot be surprising that a husband permits his wife to have access to his deposit box or rents the box jointly with her. A man may have other objects of affection aside from his wife, and the mere fact that he has sufficient confidence in his wife to give her access to his deposit box cannot be construed to mean that he wants to disregard his affections for anyone else by giving her all the property in the box. Particularly is this true, of course, when, as in the case at bar, all the securities in the box are in the name of the decedent. It is hardly believable that a man with the apparent business knowledge of the decedent would turn such securities over to his wife as survivor without endorsing them.

Second. The appellant testified that she did not remember that she signed the contract with the bank. Hence so far as she is concerned she cannot have gained an impression that she became the joint owner of securities worth a million and a half dollars with the

right of survivorship. And if that was true in her case, that was likely true in the case of the decedent. That cannot be surprising. The stamped portion of the contract as to joint tenancy and survivorship appeared below the signatures of the parties. It is true that it is not absolutely necessary that a contract be signed at the bottom of the contract. 17 C.J.S. 412. But aside from what may be inferred from the admission of the pleadings, it does not appear that either the decedent or the appellant knew that the stamped portion of the contract was affixed. That portion was affixed, primarily at least, for the protection of the bank so that it would not be responsible for the withdrawal of the contents of the box by either the decedent or the appellant. As stated by the author of an article in 32 Cal. L. R. 301-308, the parties signed an agreement containing these words simply as a matter of form and that such contract is often foisted upon co-lessees of a deposit box at the insistence of the bank or some clerk thereof. Under these circumstances such addition to the contract with the bank cannot be held to create a joint tenancy with the right of survivorship unless it is specifically provided that it refers to the contents of the box. Cerny v. Cerny, 152 Fla. 333, 11 So. 2d 777. We may mention further that the evidence herein shows that the appellant never opened the box until long after the death of the decedent. And while we need not hold that she was guilty of laches in bringing this action some fifteen months after the will was admitted to probate, it seems to be quite clear, under the facts herein, that her claim that she is entitled to the contents of the safe deposit box is an afterthought.

Third. We know that the decedent made a will dated March 14, 1951, less than nine months previous to the renting of the safe deposit box by decedent and appellant jointly. The decedent did not by his will leave all the contents in the deposit box to the appellant,

otherwise we would not have this case before us. For aught we know the contents of the box constituted all the property left by the decedent. The decedent left five daughters. There is nothing in the record before us to indicate that he wanted to disinherit them. And it is almost inconceivable that a man with the apparent business acumen of the decedent would make a will on March 14, 1951, and then revoke the will on December 6, 1951, in the manner suggested by the appellant. Section 6-306, Wyoming Compiled Statutes 1945, provides for the revocation of a will as follows:

"No will or any part thereof shall be revoked unless by burning, tearing, cancelling or obliterating the same with the intention of revoking it, by the testator or by some person in his presence and by his direction, or by some other will or codicil in writing, signed, attested and subscribed in the manner provided by law for the execution of a will, excepting only that nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator. The power to make a will implies the power to revoke the same."

There was no compliance with this section, nor is there any indication in the record before us that there were any subsequent changes in the condition and circumstances of the testator between March 14, 1951, and December 6, 1951, so that the will may be considered revoked by implication.

Fourth. We may assume, we think, that the decedent faced the realities of life, and that he knew that a great share of his estate would be taken under the Federal Estate Tax Law. Thus an estate of $1,250,000 would be taxed at $423,200, plus 42% of the estate over that amount. He also may be presumed to have known, approximately at least, that if his whole estate should be left to his widow, and she should survive him ten years, and if there should be left, say, $750,000,

it would again be taxed in the sum of $233,200, the tax being reduced proportionately according to the time during which she should survive the decedent. See Internal Revenue Code 1954, §§ 2001, 2011, 2013. It is unlikely, in view of the value of his estate, that the decedent intended that it should be subjected to such a large second tax in so short a time when he left five daughters whom he presumably loved.

Taking all the facts herein mentioned, we think it is clear that the judgment of the trial court was right, and it is affirmed.

*Affirmed.*

RINER, C. J., and HARNSBERGER, J., concur.