## Christie Estate.

Argued May 1, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

reargument refused December 12, 1969.

*Bernard J. McLafferty,* with him *Huganir, Butera and Detwiler,* for appellant.

*Peirce A. Hammond, Jr.,* with him *Richard M. Gillis, Jr.,* and *Harris, Hammond and Harris,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, November 11, 1969:

This is an appeal from a Decree of the Orphans' Court of Montgomery County directing the Provident National Bank, as guardian of the Estate of Helen L. Christie, an incompetent, to deliver certain property to Central-Penn National Bank of Philadelphia, as executor of the Estate of Robert A. Christie, deceased.

This case involves the troublesome question of the ownership of the stock and other contents of two safe deposit boxes leased jointly by a husband and wife.

At the time of his death on April 5, 1967, Robert A. Christie and his wife, Helen L. Christie, were the lessees of two safe deposit boxes—one at the Glenside office of the Continental Bank & Trust Company* and the other at the Jenkintown office of the Industrial Valley Bank & Trust Company.** Although the contents of these boxes included a small amount of tangible personal property and a few stock certificates registered either in Helen's name alone or in the names of Robert and Helen as tenants by the entireties, the controversy in this appeal centers on a substantial number of stock certificates *which were registered in the decedent husband's* name alone.

Shortly after Robert's death, Helen was adjudged an incompetent and her guardian took possession of all of the contents of the aforesaid two safe deposit boxes.

---

* Hereinafter called Continental.
** Hereinafter called Industrial.

In this proceeding, Robert's executor sought to recover as part of Robert's estate those stock certificates *which were registered solely in Robert's name.* Helen's guardian defended on the ground that Robert had created a tenancy by the entireties in these stock certificates when they were deposited* in the jointly leased safe deposit boxes, and that the stock certificates now belong to Helen by virtue of the right of survivorship. Basing its decision on the difference in the language of the contracts covering each of the two safe deposit boxes, the Orphans' Court initially ordered Helen's guardian to deliver to Robert's executor the stock contained in the Continental box which was registered in Robert's name alone, but not the stock in the Industrial box. Both parties filed exceptions. The Orphans' Court, in its final Decree sur the exceptions, *directed that the stocks in both safe deposit boxes which were registered in the name of Robert alone should be delivered to his executor as part of his estate.* It is from this Decree that Helen's guardian has appealed.

The case was presented to the Orphans' Court on a stipulation of facts to which was appended the safe deposit lease or contract agreement with each of the two banks.

### Continental

The printed contract covering the Continental safe deposit box pertinently provides:

"The undersigned hereby agree with Bank and with each other that *all rights of access to and control or surrender or exchange of the said Box and its contents*

---

* The record does not disclose when or by whom the stocks were deposited in the safe deposit box.

*may be independently and separately exercised\** by each and any of the undersigned, or by the appointed deputy of each or any of the undersigned, without the presence or consent of the other or others, and that upon or after the death of any of the undersigned all such rights shall continue exclusively in the survivor or survivors . . . ."

It will be noted that this contract *makes no reference at all to the ownership of the contents of the box, but deals solely with access,* control, surrender and exchange of the box and its contents. This Court has held that a mere joint lease of a safe deposit box is not of itself sufficient to establish joint ownership of securities found therein which originally belonged to one of the lessees alone, even though the joint lessees were husband and wife. *Martella Estate,* 390 Pa. 255, 260, 135 A. 2d 372; *Grossman Estate,* 386 Pa. 647, 650, 126 A. 2d 468; *Tomayko v. Carson,* 368 Pa. 379, 385, 83 A. 2d 907; *Wohleber's Estate,* 320 Pa. 83, 86, 181 Atl. 479. The Decree in Continental must be affirmed.

### Industrial

The contract (or lease) with the Industrial contained a printed so-called joint-tenancy agreement, which reads as follows:

"The Jenkintown Bank & Trust Company\*\* is hereby authorized and instructed to permit access to said Box, by any (or other) of the undersigned, and in the absence of the others (or either) to recognize such deputy or deputies as any (or either) of the undersigned may appoint as the deputy or deputies of all. It is agreed that *each (or either) of the undersigned*

---

\* Italics throughout, ours.

\*\* The Industrial Valley Bank & Trust Company is successor to the Jenkintown Bank & Trust Company by merger.

*is the owner of the present and future contents of said Box,* and that *in the event of death of any (or either)* of the undersigned, the survivor or survivors *shall have the right to withdraw* said contents, and upon said withdrawal said Company shall be automatically relieved of any further obligation or responsibility to the heirs, legatees, devisees, or legal representatives of the deceased."

We must determine the effect of the language of the aforesaid joint-tenancy agreement on the ownership of the stock certificates registered in Robert's name which were found (after his death) in the Industrial safe deposit box. In *King Estate,* 387 Pa. 119, 126 A. 2d 463, where the contract provided that the property in the box "is the joint property of both Lessees and, upon the death of either, passes to the survivor," we said (page 122) : "To constitute a valid gift inter vivos of the contents of a safe deposit box, two essential elements are requisite: An intention to make an immediate gift, and such an actual or constructive delivery to the donee (a) as to divest the donor of all dominion and control, or (b) if a joint tenancy is created as to invest in the donee so much dominion and control of the subject matter of the gift as is consonant with a joint ownership or interest therein. . . . Where an owner of a safe deposit box and his donee execute a contract or lease which recites that the property therein *is the joint property of the lessees, with right of survivorship,* and that the lessees acknowledge the receipt of two keys to said box—this creates a prima facie case of a valid inter vivos gift of a joint interest (with right of survivorship) in said property."*

---

* We note parenthetically that the oral evidence presented in *King Estate,* 387 Pa., supra, substantially supported the said contract and a completed inter vivos gift to the donee, but this was merely a makeweight. Cf. also, *Secary Estate,* 407 Pa. 162, 180 A. 2d 572; and *Chadrow, Exr. v. Kellman,* 378 Pa. 237, 106 A. 2d 594.

We further note that a gift of stock may be made without a change in actual registration. *Brightbill v. Boeshore*, 385 Pa. 69, 75, 122 A. 2d 38; *Connell's Estate*, 282 Pa. 555, 128 Atl. 503. See also, *McClements v. McClements*, 411 Pa. 257, 261, 191 A. 2d 814.

Appellant (Helen's guardian) vigorously contends that *the mere production of the aforesaid joint-tenancy agreement and the absence of any testimony or facts* showing a contrary intent by Robert establishes the creation of a tenancy by the entireties in the disputed stock certificates, and, therefore, the Orphans' Court erred in awarding the stock certificates in the Industrial box to Robert's executor. The fallacy in appellant's argument lies in its assumption that this safe deposit lease (which is almost always a contract prepared by a bank to protect itself in the event of disputed right of access and withdrawal, or controversial claims between and among lessees) stated not only that each lessee may have a right of access and withdrawal, but that "each" (instead of "each or either") is the owner of the present and future contents of the box. This language—"each or either"—is not sufficient or legally adequate to create and constitute a gift by Robert to Helen, his wife.

We have not overlooked the fact that the stipulation submitted by the parties contains, in addition to the safe deposit box contracts and a description of the contents, the statement that "Mrs. Christie had keys to both boxes and had occasionally availed herself of access to them." We do not consider this evidence of keys and access sufficiently clear and convincing evidence to support the claim of Mrs. Christie's guardian to her ownership of those stock certificates which were registered in Robert's name. Cf. *Tomayko v. Carson*, 368 Pa., supra, and numerous cases cited therein.

Decree in Continental and in Industrial affirmed; appellant to pay costs.

Mr. Justice ROBERTS concurs in the result.