546 N.E.2d 1287 (1989)
In the matter of the Estate of Bessie Langley.
Cecilia Highman, Appellant,
v.
SHERRY SCHAFER, Personal Representative, Appellee.
No. 87A01-8908-CV-303.
Court of Appeals of Indiana, First District.
December 12, 1989.
*1288 Terry G. Farmer, Glenn A. Deig, Bamberger, Foreman, Oswald & Hahn, Evansville, for appellant.
Charles L. Martin, Boonville, for appellee.
RATLIFF, Chief Judge.

STATEMENT OF THE CASE
Cecilia Highman (Highman) appeals the Warrick Circuit Court's entry of judgment in favor of Sherry Schafer (Schafer), the personal representative of the Estate of Bessie Langley (Langley), in Highman's action to recover the contents of a safe deposit box previously rented by Langley and Highman. We reverse.

FACTS
Highman and Langley had been friends for nearly forty (40) years. On September 9, 1974, they rented a safe deposit box at the Peoples Trust and Savings Bank of Boonville, Indiana. In so doing, they both signed a contract which contained the following provision:
"2. When two or more persons join in the execution of this agreement, said Safe and its contents during their joint lives shall be held and owned by them jointly and severally, and either of them without the other may have access to, and may surrender said Safe, and upon the death of either, the Safe, its entire contents, and all right of access thereto shall belong exclusively to the survivor or survivors. NEITHER may appoint a Deputy without the other, but either may revoke such appointment."
Record at 36.
Langley died on October 26, 1988. According to the signatures on the access card to the safe deposit box, Langley entered the box nineteen (19) times between September 12, 1974 and May 8, 1986. Over the years, she placed various items in the box, including abstracts, deeds, and $7,500.00 in cash. Highman entered the box three (3) times: when it was originally opened; when she placed $2,500.00 in cash in the box on December 11, 1984; and again when it was opened by the assessor after Langley's death.
On November 1, 1988, Schafer filed for and received a restraining order against Highman to prevent her from removing the contents of the safe deposit box. On November 7, the parties agreed to put all funds from the safe deposit box in an interest-bearing account pending further orders of the court. On January 5, 1989, Highman filed a motion to compel Schafer to surrender the funds to Highman.
A hearing was held on March 28, 1989, without the intervention of a jury. On April 12, 1989, the court found that Highman was entitled to $2,500.00 and the Estate was entitled to $7,500.00, as well as *1289 the other items in the safe deposit box.[1] On May 8, 1989, Highman instituted this appeal.

ISSUE
Highman presents one issue for our review, which we have restated as follows:
Was the lease contract of a safe deposit box that was executed by Langley and Highman, which provided that the contents of the box were to be jointly owned with a right of survivorship, legally sufficient to create survivorship rights for Highman in the contents of the safe deposit box?

DISCUSSION AND DECISION
Highman is appealing from a negative judgment; therefore, she must show that the trial court's judgment is contrary to law. In order to grant her relief, we must find that the uncontroverted evidence, and all reasonable inferences to be drawn therefrom, lead to a conclusion that is opposite to that reached by the trial court. McClure Oil Corp. v. Murray Equipment, Inc. (1987), Ind. App., 515 N.E.2d 546, 553; Steward v. City of Mt. Vernon (1986), Ind. App., 497 N.E.2d 939, 942.
Indiana cases on the subject of safe deposit boxes have been decided on the basis of a "gift theory"; that is, the question was whether the purported donor made a gift inter vivos or causa mortis to a donee when he placed personal property in a safe deposit box that was jointly held with the purported donee. See Hopping v. Wood (1988), Ind. App., 526 N.E.2d 1205, trans denied; Rule v. Fleming (1926), 85 Ind. App. 487, 152 N.E. 181; Hayes v. McKinney (1920), 73 Ind. App. 105, 126 N.E. 497.
Highman maintains that she is not proceeding under a "gift theory," but rather under a "contract theory." Specifically, Highman urges this court to find that the lease agreement for the safe deposit box was sufficient to create, by contract, a joint tenancy with a right of survivorship in the contents. Schafer claims that although Highman and Langley may have been co-lessees of the safe deposit box itself, they did not become joint tenants of the contents of the box when they signed the lease agreement.
We have been unable to find an Indiana case in which this precise issue has been decided;[2] therefore, we turn to authority from other jurisdictions.
"In a clear majority of jurisdictions where the point has arisen, deposit of articles in a jointly leased or used safe-deposit box of itself works no change in title unless there is an express agreement that the contents of the box shall be joint property. Language in a lease descriptive of joint tenancy or of the incident of survivorship, unless indubitably referable to the contents, is generally construed as running no farther than use of the box. And words to the effect that the survivor *1290 shall have right of possession and removal of contents are literally construed, so that the decedent's personal representative may require surrender of effects traceable to the decedent's ownership."
Annotation, "Survivor's rights to contents of safe-deposit box leased or used jointly with another," 14 A.L.R.2d 948, 954 (1950) (emphasis added).
Safe deposit lease agreements that allow a surviving co-tenant access to or possession of the contents of the safe deposit box, without more, have been held to be insufficient to create survivorship rights. See, e.g., In re Condos' Estate (1954), 70 Nev. 271, 285-86, 266 P.2d 404, 411; In re Estate of Christy (1969), 436 Pa. 101, 104-05, 259 A.2d 156, 158; In re Estate of Grossman (1956), 386 Pa. 647, 650, 126 A.2d 468, 470. Such provisions are, as Schafer correctly states, primarily for the protection of the bank in the event of a dispute regarding access and withdrawal among co-tenants.
Notwithstanding this rule, a majority of jurisdictions have interpreted safe deposit box leases as contracts between co-tenants providing for survivorship rights to the contents of the box. However, such agreements must specifically provide that the property placed in the box is to be jointly held, and that upon the death of a co-lessee the contents of the safe deposit box are to pass to the survivor. See, e.g., Newton County v. Davison (1986), 289 Ark. 109, 113, 709 S.W.2d 810, 811-12; Hartt v. Brimmer (1955), 74 Wyo. 338, 349-52, 287 P.2d 638, 640-44. We align ourselves with this majority of jurisdictions and hold that a safe deposit box lease agreement that specifically provides for joint ownership of and survivorship rights in the contents is sufficient to serve as a contract between the parties to establish survivorship rights in a co-tenant.
Turning to the lease agreement before us, we find that it provided that the safe deposit box "and its contents during [the cotenants'] lives shall be held and owned by them jointly and severally ... and upon the death of either, the Safe, its entire contents, and all right of access thereto shall belong exclusively to the survivor... ." Record at 36 (emphasis added). The parties' signature on the lease agreement is sufficient to establish their intent to create a joint tenancy with right of survivorship in the contents of the safe deposit box. There being no evidence to the contrary, we also find that the lease agreement was sufficient to accomplish this purpose.[3] Upon Langley's death, therefore, the contents of the safe deposit box passed to Highman.
Reversed.[4]
BAKER and SULLIVAN, JJ., concur.
NOTES
[1] The court further awarded one-fourth of the interest on the Certificate to Highman, and three-fourths of the interest to the Estate.
[2] In her appellate brief, Highman asserts that IC 32-4-1.5-14 is dispositive of this issue. We do not agree. IC 32-4-1.5-14 provides:

"(a) Any of the following provisions in an insurance policy, contract of employment, bond, mortgage, promissory note, deposit agreement, pension plan, trust agreement, conveyance or any other written instrument effective as a contract, gift, conveyance, or trust is deemed to be nontestamentary, and this title and Title 29 do not invalidate the instrument or any provision:
"(1) That money or other benefits theretofore due to, controlled or owned by a decedent shall be paid after his death to a person designated by the decedent in either the instrument or a separate writing, including a will, executed at the same time as the instrument or subsequently;
"(2) That any money due or to become due under the instrument shall cease to be payable in event of the death of the promisee or the promisor before payment or demand; or
"(3) That any property which is the subject of the instrument shall pass to a person designated by the decedent in either the instrument or a separate writing, including a will, executed at the same time as the instrument or subsequently.
"(b) Nothing in this section limits the rights of creditors under other laws of this state. As added by Act 1976, P.L. 123, SEC. 2."
(emphasis added). Although this statute arguably authorizes the creation of a joint tenancy as to a safe deposit box, it does not necessarily authorize two people to create, by a safe deposit box lease agreement, a joint tenancy with a right of survivorship to the contents of the box.
[3] We note, however, that it perhaps would have been preferable to have had in the agreement a separate provision that advised the co-lessees of the joint tenancy and right of survivorship, see Duling v. Duling's Estate (1951), 211 Miss. 465, 472, 52 So.2d 39, 42; or a place where the co-lessees could elect to sign the lease agreement either as joint tenants or as tenants in common, See Steinhauser v. Repco (1972), 30 Ohio St.2d 262, 264-65, 285 N.E.2d 55, 57.
[4] Although Schafer urges us to remand this case to the trial court for more fact finding, we decline to do so. The record before us indicates that Schafer had ample opportunity to present evidence at trial, and we see no need to provide Schafer with a second opportunity.

In addition, we note that the lease agreement executed by Langley and Highman is unambiguous; thus, we have determined its effect as a matter of law. See Washington National Corp. v. Sears, Roebuck and Co. (1985), 474 N.E.2d 116, 121, trans. denied.